RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0319p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

LUCAS BURGESS; ANGELA BURGESS,
          *Plaintiffs-Appellants*,

    v.

Sheriff GENE FISCHER, in his individual and official capacity; THE BOARD OF COUNTY COMMISSIONERS OF GREENE COUNTY, OHIO; Maj. ERIC PRINDLE, Deputy JOSHUA E. BARRRETT, Deputy GLEN E. MCKINNEY, and Deputy MATTHEW C. SORTMAN, in their individual and official capacities; D. JORDAN, LPN,

          *Defendants-Appellees*.

No. 12-4191

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:10-cv-00024—Thomas M. Rose, District Judge.

Argued: July 30, 2013

Decided and Filed: November 1, 2013

Before: MOORE, CLAY, and WHITE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Matthew C. Schultz, BRANNON & ASSOCIATES, Dayton, Ohio, for Appellants. Kevin A. Lantz, SURDYK, DOWD & TURNER CO., L.P.A., Miamisburg, Ohio, for Appellees. **ON BRIEF:** Matthew C. Schultz, Dwight D. Brannon, BRANNON & ASSOCIATES, Dayton, Ohio, for Appellants. Kevin A. Lantz, Edward J. Dowd, SURDYK, DOWD & TURNER CO., L.P.A., Miamisburg, Ohio, for Appellees.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.   Plaintiffs Lucas and Angela Burgess (collectively "Plaintiffs") appeal the summary judgment order that dismissed their excessive force, failure to intervene, deliberate indifference to a serious medical need, and municipal liability claims raised pursuant to 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments, as well as various state law claims, against Defendants.  The district court granted Defendants summary judgment on all claims on the basis of qualified immunity, state law immunity, or failure to set forth sufficient facts to establish a *prima facie* case. Because we find that the right to be free from excessive force for pre-trial detainees in the booking process was clearly established under the Fourth Amendment at the time of this incident, we hold that the district court erred in failing to review the excessive force claim for reasonableness.  Upon considering the proper standard of liability, it is clear that material facts are still in dispute, and thus, the district court erred in granting summary judgment on this claim, as well as on the negligence, assault, battery, loss of consortium, intentional infliction of emotional distress, and spoliation of evidence claims under state law.

For the following reasons, we **REVERSE** in part the judgment of the district court granting Defendants summary judgment on Plaintiffs' § 1983 excessive force claim under the Fourth Amendment, as well as the state law claims of  negligence, assault, battery, loss of consortium, intentional infliction of emotional distress, and spoliation of evidence, **VACATE** the district court's grant of summary judgment on Plaintiffs' civil conspiracy claim, and **REMAND** for further proceedings consistent with this opinion; we **AFFIRM** with respect to all other claims on appeal.

**BACKGROUND**

**A.    Factual Background**

On January 23, 2009, Lucas Burgess ("Burgess") was pulled over by police for a routine traffic stop for speeding, but was found to be under the influence of alcohol and the prescription drug Paxil.  After failing several field sobriety tests, Burgess was placed under arrest for driving while intoxicated, in violation of Ohio Rev. Code § 4511.19.  He admits to being uncooperative with the arresting officer, Ohio State Highway Patrol Trooper David Griffith.  His resistance at the scene caused Griffith and his partner to perform a "takedown"—a tackle to the ground—on Burgess in order to subdue him and place him in handcuffs.  However, according to Burgess and Griffith, Burgess did not suffer any apparent injuries from the takedown at the scene.  Burgess' disruptive behavior continued while in transport to the Greene County Jail.  He was belligerent and yelled expletives at Griffith, who in turn forewarned officials at the jail that he was bringing in an irate arrestee for booking.

Several officials awaited Burgess' arrival, including the following defendants: Green County Deputy Sheriffs Joshua Barrett and Glen McKinney; Green County Corrections Officer Matthew Sortman; and Debbie Jordan, who worked as a nurse at the jail.  Upon his arrival, Burgess was handed over to Barrett and McKinney, who attempted to search his person some time shortly after 10:00 p.m. as part of the booking process.  At some point during the search, Barrett and McKinney performed a takedown on Burgess.

The parties dispute whether Burgess was noncompliant before the takedown and the effect the takedown had on Burgess.  According to Burgess, he was physically compliant and was not actively resisting the search, but was nonetheless knocked unconscious immediately after asking one of the officers, "while you're down there, you want to give me a blow job?"  (R.44, Am. Compl. ¶ 36; R.84, Burgess' Depo., PID# 1019.)  Griffith, who was still present at the time of the takedown, noticed that Burgess was bleeding from "the face or head area."  (R.86, Ex. 4, PID# 1573–74.)

Burgess asserts that he did not awake until several hours later at around 2 or 3 a.m. with excruciating pain in his face and head, and a broken tooth. He asked for medical attention, which Jordan provided. She gave Burgess ibuprofen, and advised him that he merely had contusions but could request further medical attention if he wished to do so.

In contrast, Defendants assert that Burgess was irate and attempting to leave the mat area where the search was being conducted, and that he failed to comply with orders to stand still. Burgess was warned that his continued noncompliance would result in a takedown. Burgess did not heed the warning, and McKinney ordered the takedown after Burgess' "blow job" remark and continued physical resistance. Defendants assert that the takedown lasted no more than ten seconds, and at no time was Burgess unconscious. Jordan assessed a conscious Burgess for injuries right after the takedown, and observed only "a small cut, bruising and some swelling in the vicinity of his left eye" and "a small amount of bruising and redness on his wrists and hands." (R.87-4, Jordan Aff., PID# 1657.) In her view, there were no injuries that warranted treatment or transport to a hospital, even when she again assessed Burgess' injuries later at his holding cell where he displayed a broken tooth. Jordan provided him with ibuprofen, and Burgess made no further requests for medical attention by the time Jordan completed her shift at 12:45 a.m. Burgess completed the booking process some time after 3:00 a.m.; and, according to Defendants, the prolonged process resulted from Burgess being combative and intoxicated rather than unconscious.

Neither party disputes that shortly after 3 a.m., Burgess completed a "Medical Screening Form," indicating that he had "no visible signs of trauma or illness," "no emergent illness or injury," and "no other medical/physical conditions of which the Jail should be aware." (*Id.* at PID# 1658, 1660–64.) Jordan signed the form when she returned for her next shift later that day. Upon his release, however, Burgess admitted himself into a nearby hospital where CT scans revealed that he had a "displaced left posterior lateral and inferior orbital wall fractures" and "moderate muscosal thickening of the left maxillary sinus from a displaced left anterior medial and posterolateral maxilla

wall fractures." (R.85, Dr. Joseph Paris Depo., PID# 1274.)  The fractures to Burgess' jaw and skull required surgery.

Despite his injuries, Burgess never contacted the Ohio State Highway Patrol or Greene County to complain or report the incident.  Nonetheless, a routine internal investigation was conducted by the now-retired jail administrator, Defendant Major Eric Prindle, in accordance with police policy concerning any use of physical force.  After speaking with the officials involved with the incident and reviewing their written reports, Prindle found that Barrett, McKinney, and Jordan followed the Green County Sheriff's policies regarding arrestee intake, medical screening, and the use of force.  Sheriff Gene Fischer approved the investigation and its findings.  The videotape evidence of the incident was destroyed pursuant to a five-day document retention policy.

## B.    Procedural History

In January 2010, Plaintiffs filed the instant action against Defendants Griffith, Barrett, McKinney, Sortman, Prindle, and Fischer, individually and in their official capacities; Jordan in her individual capacity; and the Greene County Board of Commissioners (hereinafter "Board").[1]  They asserted constitutional claims for the use of excessive force, failure to intervene, denial of health care, violation of policies and procedures, and failure to train, supervise, and discipline under 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments.  They also asserted numerous state law claims, including negligence, assault, battery, loss of consortium, intentional infliction of emotional distress, conspiracy to falsify reports, spoliation of evidence, medical negligence, and civil conspiracy.  Defendants moved for summary judgment on all claims, while Plaintiffs moved for partial summary judgment on Defendants' asserted affirmative defenses.  The district court granted Defendants' motion in full and found Plaintiffs' motion moot.  The official capacity claims against the individual defendants

---

[1]Griffith was granted his motion to dismiss for lack of subject matter jurisdiction because the Eleventh Amendment bars the adjudication of pendent state law claims against non-consenting state defendants in federal court.  *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540–41 (2002); *see also Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir. 1989) (applying Ohio law).  His dismissal is not challenged on appeal.

were dismissed as duplicative municipal liability claims, while the remaining claims were dismissed based on either qualified immunity, state law immunity, or failure to establish a *prima facie* case. *See Burgess v. Fischer*, 890 F. Supp. 2d 845 (S.D. Ohio 2012). Plaintiffs timely appealed the judgment.

## DISCUSSION

### I.       Standard of Review

We review the district court's grant of summary judgment on qualified immunity grounds *de novo*. *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012). A moving party is entitled to summary judgment if the pleadings, the discovery and the disclosure materials on file, and any affidavits "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue for trial where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We must ultimately decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). In doing so, the evidence is construed and all reasonable inferences are drawn in favor of the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 332 (6th Cir. 2008).

### II.      Excessive Force

Plaintiffs assert that Barrett and McKinney used excessive force in performing the takedown on Burgess during the search at the jail, while Defendants contend that they are entitled to qualified immunity. There is a long-standing principle that government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity.

*Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009).  To determine whether qualified immunity applies in a given case, we use a two-step analysis:  (1) viewing the facts in the light most favorable to the plaintiff, we determine whether the allegations give rise to a constitutional violation; and (2) we assess whether the right was clearly established at the time of the incident.  *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).  We can consider these steps in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A.        Standard of Liability

This case presents an unusual circumstance where we must first determine under which constitutional amendment the right asserted was clearly established.  Section 1983 does not confer substantive rights; rather, it is only a means to vindicate rights already conferred by the Constitution or laws of the United States.  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).  Excessive force claims, however, can be raised under the Fourth, Eighth, and Fourteenth Amendments.  Which amendment should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two.  *Lanman v. Hinson*, 529 F.3d 673, 680–81 (6th Cir. 2008); *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002).  The Fourth Amendment's prohibition against unreasonable seizures bars excessive force against free citizens, *see Graham*, 490 U.S. at 388, while the Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons.  *See Whitley v. Albers*, 475 U.S. 312, 318–22 (1986).  When a citizen does not fall clearly within either category—e.g., pretrial detainees—the Fourteenth Amendment's more generally applicable Due Process Clause governs to bar a governmental official's excessive use of force.  *See Lanman*, 529 F.3d at 680–81; *Phelps*, 286 F.3d at 300.

A plaintiff has a substantially higher hurdle to overcome to make a showing of excessive force under the Fourteenth Amendment as opposed to under the Fourth Amendment. *Darrah v. City of Oak Park*, 255 F.3d 301, 306 (6th Cir. 2001).  Under the Fourth Amendment, we apply an objective reasonableness test, looking to the

reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not to the underlying intent or motivation of the defendants. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004); *see also Graham*, 490 U.S. at 396–97. We balance "the nature and quality of the intrusion on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher*, 434 F.3d 461, 466–67 (6th Cir. 2006). In doing so, three factors guide our analysis: "'[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officers or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013) (quoting *Graham*, 490 U.S. at 396). These factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight. *Graham*, 490 U.S. at 396–97.

In contrast, with a Fourteenth Amendment claim, we consider whether the defendant's conduct "shocks the conscience" so as to amount to an arbitrary exercise of governmental power. *Darrah*, 255 F.3d at 306 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46, 851–53 (1998)). This standard differs depending on the factual circumstances. *See id.* Where defendants are "afforded a reasonable opportunity to deliberate . . . their actions will be deemed conscience-shocking if they were taken with 'deliberate indifference' towards the plaintiff's federally protected rights." *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000) (citing *Lewis*, 523 U.S. at 851–52). If, however, the incident was a "rapidly evolving, fluid, and dangerous predicament," the plaintiff must show that the defendant acted "'maliciously and sadistically for the very purpose of causing harm' rather than 'in a good faith effort to maintain or restore discipline.'" *Id.* (quoting *Lewis*, 523 U.S. at 853).

Notwithstanding the Due Process Clause's broader applicability, we remain cognizant of the fact that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive

due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham*, 490 U.S. at 394).

### B.     Clearly Established Right

In the instant case, the district court applied the "shocks the conscience" standard of the Fourteenth Amendment to find that there was no evidence that the deputies acted maliciously and sadistically. *See Burgess*, 890 F. Supp. 2d at 854–56. The district court found that the claim did not fall under the Fourth Amendment because the right to be free from excessive force as a pretrial detainee in the booking process was not clearly established until our decision in *Aldini v. Johnson*, 609 F.3d 858 (6th Cir. 2010), well after Burgess' arrest. *See Binay v. Bettendorf*, 601 F.3d 640, 646–47 (6th Cir. 2010) ("For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (internal quotation marks omitted)). However, a review of our case law, including *Aldini*, compels the opposite conclusion, and we find that the district court erred in not applying the Fourth Amendment's reasonableness standard to the facts of this case.

In *Aldini*, the plaintiff was allegedly beaten and repeatedly tased by several officers in May 2006 while he was being held in the booking room pending completion of the booking process but after he had been surrendered to the jailers by his arresting officer. *Aldini*, 609 F.3d at 860–62. The same question was presented to the *Aldini* court—whether the Fourth or Fourteenth Amendment's standard of liability applied. We held that the Fourth Amendment's reasonableness standard governed the 2006 incident. *Id.* at 867. The *Aldini* court recognized that we had never addressed the precise question of "how far the Fourth Amendment's protection extended beyond the transfer of custody from the arresting office[r]s"; however, we noted that our precedent nonetheless established the broader understanding that the Fourth Amendment extends "at least through the completion of the booking procedure, which is typically handled by jailers." *Id.* at 865–66; *see also Phelps*, 286 F.3d at 300–01. And while our 2002 decision in *Phelps* could have been narrowly construed as clearly establishing the Fourth Amendment's protection only for individuals still in the custody of the arresting officer

as opposed to the jailers, *see* 286 F.3d at 299–300, it was not required to be on all fours in order to form the basis for the clearly established right. *See Quigley v. Truoung Vinh Thai*, 707 F.3d 675, 684 (6th Cir. 2013).

To be sure, *Aldini* did set forth a new principle. The *Aldini* court clearly established in 2010 that the dividing line between the Fourth and Fourteenth Amendment zones of protection was the probable cause hearing for warrantless arrests. 609 F.3d at 867. However, the district court missed a critical point of the decision—it was already clearly established that the Fourth Amendment's reasonableness standard applied at least through the booking process. *See id.* at 865–66. Indeed, the court held that the Fourth Amendment's reasonableness standard applied to a set of facts arising in May 2006, over two-and-a-half years before Burgess' car was stopped on January 23, 2009. *See id.* at 866. Because it was a reversal, the *Aldini* decision necessarily held that the Fourth Amendment right was clearly established in 2006. Therefore, the right was no less established in January 2009 when Burgess was allegedly assaulted. Consequently, the district court erred in applying the Fourteenth Amendment's "shocks the conscience" standard rather than the Fourth Amendment's reasonableness standard.

## C.     Constitutional Violation

Defendants argue that despite the fact that the district court applied an incorrect legal standard, the error was harmless. We disagree. "[F]orce that does not shock the conscience may nevertheless be unreasonable under the Fourth Amendment." *Id.* at 867. In viewing the facts in the light most favorable to Plaintiffs, we believe this case is a clear example of that point. We consider the following reasonableness factors to assess Burgess' excessive force claim: the severity of his crime, whether he posed an immediate threat to the safety of McKinney, Barrett or others, and whether he was actively resisting arrest or attempting to evade arrest. *See Martin*, 712 F.3d at 958. In this case, there are factual disputes that are material to the reasonableness inquiry that preclude summary judgment for McKinney and Barrett—specifically, whether Burgess posed a threat or actively resisted arrest.

Plaintiffs claim that at the time of the takedown, Burgess was handcuffed, surrounded by four jail officials, and compliant with the orders necessary to facilitate the search. He admits only that he made an offensive remark to the officers—the "blow job" comment—which precipitated the takedown that rendered him unconscious. On these facts, our case law overwhelmingly compels a finding that the takedown resulting in several fractures to Burgess' face and head was unreasonable and clearly established as being so. *See, e.g.*, *Schreiber v. Moe*, 596 F.3d 323, 332 (6th Cir. 2010) ("[S]triking a neutralized suspect who is secured by handcuffs is objectively unreasonable."); *Phelps*, 286 F.3d at 301; *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (asserting that there is no need for any force when a detainee is handcuffed, non-threatening, and not trying to flee); *cf. Grawey v. Drury*, 567 F.3d 302, 310–11 (6th Cir. 2009) (finding that the use of pepper spray on an individual who had surrendered to an arrest was unreasonable) (collecting cases). Burgess' remarks, no matter how crude, could not alone weigh these factors in Defendants' favor where he was handcuffed, surrounded by several officials, and not physically resistant. And the fact that Burgess was initially resistant at the scene of the traffic stop with Trooper Griffith does not weigh in Defendants' favor. *See Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981) ("No matter how difficult it is to apprehend a prisoner, the law does not permit officers to beat him once he is securely in custody.")

Defendants assert that Burgess was combative so as to impede the efforts to search him and, specifically, that he pulled away from the deputies and disobeyed multiple orders to keep his head on the mat. They further assert that the takedown occurred only after Burgess was fairly warned that his continued noncompliance would result in a takedown. Although the district court was able to bypass this factual dispute as non-determinative for its shocks-the-conscience assessment, we find that this factual dispute goes to the heart of the reasonableness assessment. In sum, the dispute of material facts bars resolution of the excessive force claims against McKinney and Barrett on qualified immunity grounds. *Huckaby v. Priest*, 636 F.3d 211, 216–17 (6th Cir. 2011). Therefore, we reverse the district court's order granting Barrett and McKinney summary judgment.

**III.     Failure to Intervene**

We now turn to the failure to intervene claim against Officer Sortman and Nurse Jordan.   As a general matter, Sortman's and Jordan's mere presence during the altercation, without a showing of some direct responsibility,  cannot suffice to subject them to liability.  *See Binay*, 601 F.3d at 650.  Since these defendants did not actively participate in the takedown, there must be a showing that they either supervised the deputies who did so or owed Burgess a duty of protection.  *See Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  To maintain their claim that Sortman and Jordan owed Burgess a duty of care, Plaintiffs must show that these defendants "observed or had reason to know that excessive force would be or was being used" *and*  "had both the opportunity and the means to prevent the harm from occurring." *Id*.  Plaintiffs simply have not met their burden.

Although the district court found this claim failed because it dismissed the excessive force claim, we nonetheless affirm on alternate grounds. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 362 (6th Cir. 2012) ("Appellate courts reviewing summary judgment may affirm on any grounds supported by the record.").  Even assuming that the takedown amounted to excessive force, Plaintiffs have failed to establish that Sortman and Jordan had the "opportunity and means" to intervene to establish this claim.  That is, they failed to demonstrate that the incident lasted long enough for Sortman or Jordan to both perceive what was going on and intercede to stop it.  *See Durham v. Nu'man*, 97 F.3d 862, 868 (6th Cir. 1996); *see also Kowolonek v. Moore*, 463 F. App'x 531, 539 (6th Cir. 2012) (finding that the defendant did not have the opportunity to intervene given the rapid sequence of events and the minimal time necessary to use a taser); *Ontha v. Rutherford Cnty.*, *Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007) (finding that six or seven seconds was insufficient time to compel intervention).  Plaintiffs have failed to meet their burden.

Plaintiffs assert that Sortman and Jordan were in a position to at least reduce the force with which Burgess' head struck the ground.  However, Plaintiffs do not contend that the takedown lasted any more than ten seconds.  Moreover, Plaintiffs do not suggest

that these defendants had reason to anticipate the takedown or its result. Sortman and Jordan simply did not have the benefit of hindsight at the time of the incident. On these facts, there was not enough time for Sortman or Jordan to both perceive the incident and intervene to assist Burgess. Therefore, we affirm the district court's dismissal with respect to this claim.

## IV.    Deliberate Indifference

### A.        Legal Framework

We consider next Plaintiffs' deliberate indifference claim against Jordan for her alleged inadequate treatment of Burgess' injuries. The deliberate indifference to serious medical needs of prisoners—e.g., the failure to respond to medical needs, intentional denial or delay of medical care, or intentional interference with a prescribed treatment—constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). The Fourteenth Amendment's Due Process Clause governs such claims presented by pretrial detainees, but "are analyzed under the same rubric as Eighth Amendment claims brought by prisoners." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013).

We employ a two-prong test with objective and subjective components to assess such claims. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, we determine whether the plaintiff had a "'sufficiently serious' medical need" under the objective prong. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004). Second, we determine whether the defendant had a "'sufficiently culpable state of mind'" in denying medical care under the subjective prong. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer*, 511 U.S. at 834). There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required. *See Farmer*, 511 U.S. at 835. The defendant must have "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the

existence of such needs." *Blackmore*, 390 F.3d at 896 (internal quotation marks omitted). Where the plaintiff has received some medical treatment, "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  However, it is possible for the treatment provided to be "so woefully inadequate as to amount to no treatment at all." *Id.*; *accord Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011).

### B.     Analysis

We agree with the district court's finding that Plaintiffs failed to establish either prong of the deliberate indifference test.  Plaintiffs do not assert that Burgess' facial and head fractures were obvious to a lay person.  Indeed, the record suggests that these injuries were discovered only after CT scans were taken at the hospital.  Burgess' injuries thus were latent medical injuries, which require a showing that the delay in treatment itself caused a serious medical injury.  *See Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).  Plaintiffs do not provide any such evidence.  Plaintiffs' counsel conceded at oral argument that there was no evidence that Burgess' injuries were made worse by the delay in diagnosis.  We explained in *Blackmore* that verifying medical evidence of an exacerbated injury was necessary to establish the objective prong for "minor maladies or non-obvious complaints of a serious need for medical care." *See* 390 F.3d at 898; *Napier*, 238 F.3d at 742.  Plaintiffs claim only that Burgess endured hours of pain, which is insufficient to establish his claim.

Plaintiffs alternatively assert that they established the objective prong with the after-the-fact medical diagnosis of Burgess' fractures at the hospital.  This assertion is incorrect. The ability to satisfy the objective prong with a showing that the injury was diagnosed by a physician who mandated treatment necessarily contemplates the diagnosis being made *before* the defendant's alleged deliberate indifference.  Latent injuries are generally diagnosed by a physician after the defendant's treatment or lack thereof, giving the plaintiff notice of the injury and a basis for the claim.  There would be no need for *Napier*'s requirement of verifying medical evidence for latent injuries,

or the alternative option of showing that an injury was obvious to a lay person, if a *post hoc* diagnosis of the latent injuries would suffice to establish the objective prong.

Moreover, Plaintiffs have failed to establish the subjective prong:  there is no evidence that Jordan knew of the need for further treatment or should have known as a result of the circumstances.  Plaintiffs' medical expert asserted only that a licensed practical nurse faced with Burgess' bruises and scratches should have further inspected the injury and possibly could have discovered the fractures.  The medical expert claimed that Jordan departed from the acceptable standard of care in conducting her evaluation of Burgess.  However, even if true, this only supports a finding that Jordan was merely negligent, which is insufficient to state a deliberate indifference claim under § 1983.  *See Weaver v. Shadoan*, 340 F.3d 398, 411 (6th Cir. 2003); *see also Farmer*, 511 U.S. at 835.  Jordan assessed Burgess' injuries and noted that he had cuts, bruising, and swelling.  She also provided him with ibuprofen for the discomfort and advised him to notify the medical department if he needed further treatment.  The record suggests that Burgess' injuries appeared to be superficial, non-serious physical conditions, which generally do not warrant medical treatment.  *See Blackmore*, 390 F.3d at 898.  And there is no evidence that Jordan's treatment was woefully inadequate given the circumstances.

Finally, Plaintiffs take issue with the fact that there were discrepancies in the description of Burgess' injuries on the Medical Screening Form he completed during the booking process and Jordan's personal notes of his injuries.[2]  However, any failure on Jordan's part to note her own observations on Burgess' form was, again, at best negligence.  We do not believe this fact would alone permit an inference that she was deliberately indifferent under the subjective prong.  In sum, Plaintiffs have failed to establish either prong of the deliberate indifference test and, thus, we affirm the district court's dismissal of this claim.

---

[2]It appears Plaintiffs originally pleaded this claim in connection with their separate state law claims for conspiracy to falsify reports and tampering with evidence in their complaint.  However, they have abandoned those claims on appeal, having not presented any argument on them.  *See Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004).  On appeal, the assertion arises only in connection with Plaintiffs' deliberate indifference claim and is treated accordingly.

## V.        *Monell* Liability

### A.        Legal Framework

Plaintiffs' final federal claim is a municipal liability claim against the Greene County Board of Commissioners.  A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following:  (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.  *See Thomas v. City of Chatanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.

### B.        Analysis

Plaintiffs attempt to establish their *Monell* claim in three of the four above-mentioned ways.  They claim that Defendants had a policy of failing to train and supervise deputies on excessive force and staff on proper medical treatment, Major Eric Prindle's inadequate investigation proved there was a custom of tolerance, and Sheriff Gene Fischer authorized the alleged illegal acts.  A failure-to-train claim, however, requires a showing of "'prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)).  Similarly, a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims.  *See Thomas*, 398 F.3d at 433; *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1248 (6th Cir. 1989). Plaintiffs fail to point to any evidence of a pattern for either.

Plaintiffs have not set forth *any* facts that there were prior instances of similar misconduct so as to show that the Board was on notice that its training and supervision with respect to the use of force and medical treatment was deficient. *See Miller*, 606 F.3d at 255. And although Plaintiffs assert that Prindle should have done more in his investigation of the takedown and treatment provided to Burgess, as in *Thomas*, they simply have not demonstrated a pattern of inadequate investigation of similar claims as required. *See Thomas*, 398 F.3d at 433. Plaintiffs point to this Court's decision in *Leach v. Shelby County Sheriff*, to assert that the failure to investigate supports a municipal liability claim. 891 F.2d 1241 (6th Cir. 1989). However, the *Leach* court was equipped with evidence of several separate instances where the prison failed to investigate similar claims of prisoner mistreatment. *See id.* at 1247–48 (noting that the lower court found that "at least 14 other paraplegics had received similar deplorable treatment"). Plaintiffs have not shown the existence of any prior instances of a failure to investigate claims of excessive force.

Notwithstanding, a plaintiff would not need to establish a pattern of past misconduct where the actor was a policymaker with final policymaking authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–84 (1986) (plurality opinion); *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 816 (6th Cir. 2005). Plaintiffs attempt to establish *Monell* liability on a single-act theory, asserting that Sheriff Fischer's approval of the *post hoc* investigation by Prindle was sufficient for a finding that there was a unconstitutional policy by the Board. However, on a single-act theory, a plaintiff must demonstrate that a "deliberate choice to follow a course of action is made from among various alternatives by the official . . . responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. Moreover, that course of action must be shown to be the moving force behind or cause of the plaintiff's harm. *See id.* at 484–85 (finding *Monell* liability where the final decision maker ordered deputies to enter the plaintiff's medical clinic in violation of his Fourth Amendment right); *Moldowan v. City of Warren*, 578 F.3d 351, 394 & n.20 (6th Cir. 2009) (affirming denial of summary judgment on *Monell* claim where Plaintiff alleged that final

policymaker directed the destruction of material evidence); *Meyers v. City of Cincinnati*, 14 F.3d 1115, 1118 (6th Cir. 1994).

In the instant case, Fischer did not order the takedown, nor do Plaintiffs assert that a course of action selected by Fischer was the moving force behind Burgess' injury. Fischer's after-the-fact approval of the investigation, which did not itself cause or continue a harm against Burgess, was insufficient to establish the *Monell* claim. *Cf. Pembaur*, 475 U.S. at 481–84; *Moldowan*, 578 F.3d at 394 & n.20. Such an outcome would effectively make the Board liable on the basis of *respondeat superior*, which is specifically prohibited by *Monell.* 436 U.S. at 694–95. In sum, even assuming there was an underlying constitutional violation, we affirm the dismissal of the *Monell* claim because Plaintiffs have failed to set forth sufficient facts to establish an unconstitutional custom or policy.

## VI.    State Law Claims

We now turn to the pendent state law claims summarily dismissed by the district court. As an initial matter, we note that employees of an Ohio political subdivision who act within their official duties are statutorily immune from suits in tort based on mere negligence.[3] *Anderson v. City of Massillon*, 983 N.E.2d 266, 271–72 (Ohio 2012). To overcome this immunity, the alleged action or inaction must be committed "with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). "'Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." *Cook v. City of Cincinnati*, 658 N.E.2d 814, 821 (Ohio Ct. App. 1995). A defendant can be said to act in "bad faith" where it is shown that he acted with a "dishonest purpose," or "conscious wrongdoing," or he breached a "known duty through some ulterior motive or ill will." *Id.* "Wanton misconduct is the failure to exercise *any* care toward those to whom a duty of care is owed in circumstances in which there is

---

[3]The political subdivision is also immune from civil suit unless a statutory exception under Ohio Revised Code § 2744.02(B) applies. However, Plaintiffs make no argument on appeal that a statutory exception applies to the Board—so that issue is not before us.

great probability that harm will result." *Anderson*, 983 N.E.2d at 273 (emphasis added). And finally, "reckless conduct" is the "conscious disregard of or indifference to a known or obvious risk of harm . . . that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.*

### A.    Negligence, Assault, Battery and Loss of Consortium Claims

Plaintiffs assert that the takedown by Barrett and McKinney amounted to negligence, assault, and battery; and Angela Burgess advances a claim for loss of consortium.  The district court dismissed these claims, relying on its finding that the takedown was not unconstitutionally excessive.  However, because we find that there is a question as to whether Barrett's and McKinney's conduct was reasonable under the Fourth Amendment, we also find that upon viewing the facts in a light most favorable to Plaintiffs there is a question as to whether the conduct was reckless under § 2744.03(A)(6)(b). *See Harris v. City of Circleville*, 583 F.3d 356, 370 (6th Cir. 2009) (applying Ohio law).  On Plaintiffs' alleged facts, the handcuffed, intoxicated, and physically compliant Burgess was slammed to the ground by two deputies, resulting in serious facial and skull fractures.  Surely there is a question as to whether this conduct amounted to recklessness.  And because the loss of consortium claim is derivative of the negligence, assault, and battery claims, we find that this claim must also survive summary judgment.  *See Bowen v. Kil-Kare, Inc.*, 585 N.E.2d 384, 392 (Ohio 1992).

### B.    Intentional Infliction of Emotional Distress

Plaintiffs assert a claim for intentional infliction of emotional distress arising out of Barrett's and McKinney's actions at the jail.  To establish a *prima facie* claim for intentional infliction of emotional distress, "a plaintiff must prove (1) that the defendant intended to cause the plaintiff serious emotional distress, (2) that the defendant's conduct was extreme and outrageous, and (3) that the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress." *Phung v. Waste Mgmt., Inc.*, 644 N.E.2d 286, 289 (Ohio 1994).  Liability can only be found where conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983) (quoting Restatement (Second) of Torts § 46 cmt. d), *abrogated on other grounds by Welling v. Weinfield*, 866 N.E.2d 1051, 1054 (Ohio 2007). Based on the record before us, genuine issues of material fact preclude summary judgment on this claim in Defendants' favor.

According to Plaintiffs' version of the facts, Burgess physically cooperated with Barrett and McKinney while they searched him. Burgess' sole transgression was to goad Barrett and McKinney by saying "while you're down there, you want to give me a blow job?" Burgess testified that this comment made the officer searching him angry, and that officer "took [his] anger out on" Burgess. (R.84, Burgess Dep., PID# 1019.) The next thing Burgess knew, he was waking up several hours later with facial lacerations and a broken tooth. Were a jury to credit Plaintiffs' version of events, that jury could reasonably conclude that the officer who knocked Burgess out was intending to do more than hurt Burgess physically. A reasonable jury could infer that an officer assaulted him with the intent to reprimand Burgess for this remark—that is, to humiliate him. Under this version of the facts, one could conclude that an officer's assault of a compliant arrestee for an off-color jibe is utterly intolerable in a civilized community. *Cf. Radcliff v. Steen Elec., Inc.*, 841 N.E.2d 794, 804 (Ohio Ct. App. 2005) ("That an employer might sanction [sexual pranks] in the workplace in retaliation for [a] rumored comment about [an employee's] sexual orientation is [] intolerable in a civilized community."). Since Burgess' injuries were sufficiently severe so as to satisfy the third element of the prima facie case,[4] Plaintiffs are entitled to have a jury hear this claim.

### C.     Medical Negligence

Plaintiffs assert that the medical attention provided by Jordan amounted to medical negligence. For a medical negligence claim, a plaintiff typically must show that the defendant breached an existing standard of care within the medical community, thus

---

[4]The district court found that Burgess had not presented sufficient evidence of "severe and debilitating" emotional distress; however, such evidence is not required where the plaintiff has suffered contemporaneous physical injury. *See CitiMortgage, Inc. v. Hoge*, 962 N.E.2d 327, 334 (Ohio Ct. App. 2011) (citing *Paugh v. Hanks*, 451 N.E.2d 759, 765 (Ohio 1983)).

causing his injury. *Bruno v. Tatsumi*, 346 N.E.2d 673, 677 (Ohio 1976). However, mere negligence is insufficient to overcome Jordan's immunity under Ohio Rev. Code § 2744.03(A)(6)(b), and Plaintiffs have failed to set forth sufficient facts that she acted in bad faith or in a malicious, reckless, or wanton manner.

Nurse Jordan tended to Burgess after the takedown and when he later requested aid from his holding cell. She assessed what she perceived to be minor injuries, provided him with ibuprofen for his pain, and advised him he could contact someone for further medical assistance if necessary. There is simply no evidence that Jordan intended to harm Burgess, acted with a dishonest purpose, or with indifference to a known or obvious harm. And what Plaintiffs' expert asserts was a departure from accepted standards of care in the medical community, i.e., negligence, is insufficient to overcome statutory immunity. Accordingly, we affirm the dismissal of this claim.

### D.      Spoliation of Evidence

Plaintiffs contend that when Defendants destroyed the videotape of the jail takedown, they committed a tort under Ohio law. The Ohio Supreme Court has recognized a free-standing cause of action for spoliation of evidence. *See Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993). The elements of a claim for spoliation are: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Id.* On appeal, Defendants contend that Plaintiffs have not established the second or third elements of this claim. The record, however, reveals a genuine issue of fact both as to whether Defendants knew that litigation was probable and whether the destruction was willful.

As to the second element, Defendants assert that they neither knew nor should have known that litigation was probable at the time the tape was destroyed—just a few days after the events at the jail. Defendants claim that the tape was destroyed this soon after those events under a County policy that requires these tapes to be retained for only

five days. We have no occasion here to judge whether this document retention schedule runs afoul of Ohio public policy.[5] We only note that since the County has adopted this schedule, purportedly for its own benefit, it should expect that this Court will consider the schedule as part of the totality of the circumstances in this case. Here, the combination of the County's own policy with the alleged severity of the takedown preclude summary judgment on the second element of Plaintiffs' spoliation claim.

According to Plaintiffs' version of the facts, Burgess was the victim of an intentional assault in the jail that night. If "the threat of pending litigation seems possible as a result of any accident," *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 569 (6th Cir. 2006) (applying Ohio law), conduct that goes well beyond an accident makes litigation even more likely. *See also Maynard v. Jackson County Ohio*, 706 F. Supp. 2d 817, 829 (S.D. Ohio 2010) ("[C]ourts have held that immediately after a motor vehicle accident occurs, reasonable people can anticipate that a lawsuit may be filed."). Perhaps the takedown alone would not be sufficient to place Defendants on notice of probable litigation if they had waited weeks or months to destroy the tape. But where the countdown to destruction is so brief, and the alleged conduct so serious, a reasonable jury could conclude that Defendants knew or should have known that litigation was probable when the tape was destroyed.

Defendants claim that even if they knew of probable litigation when they destroyed the tape, that destruction was not willfully designed to disrupt Plaintiffs' case. "In a spoliation case, 'willful' reflects an intentional and wrongful commission of the act." *White v. Ford Motor Co.*, 755 N.E.2d 954, 957 (Ohio Ct. App. 2001); *see also Owca v. Fed. Ins. Co.*, 95 F. App'x 742, 745 (6th Cir. 2004). Defendants assert that they did not act with this intent—they simply followed the County's document retention schedule. This argument fails for two reasons. First, the document retention schedule does not demand, and may proscribe, destroying tapes such as these so soon after the

---

[5]We do note, however, that a five-day document retention policy seems patently unreasonable. Such a policy bars review of the evidence by anyone (including the County's own officials who may want to review the internal investigation). The policy appears to be unreasonable, particularly in contrast to the fact that the Ohio State Highway Patrol apparently preserves its videos long enough to be of use to litigants in Plaintiffs' position.

events captured. The policy applies to "[t]apes of jail areas (may include disturbances), and tapes from patrol cars' in-car cameras," and provides that "[t]apes may be erased and reused after five days." (R. 87-7, Fischer Aff., Ex 6-4, at PID# 1789.) Thus by its own terms, the policy does not require that tapes be destroyed after five days. Defendants cannot therefore point to the policy and assert that destruction was compulsory. In addition, the policy appears to exclude tapes such as the one relevant to this case—if a jury credits Plaintiffs' narrative, the tape depicted more than a mere "disturbance." The policy, then, does not provide the blanket excuse Defendants seek.

Second, and more importantly, Defendants admit to violating their own policy. In support of Defendants' motion for summary judgment, the Greene County sheriff stated under oath that "[a]ny video of Mr. Burgess' intake and booking would have been erased *within* five (5) days of its recording" pursuant to the County's document-retention policy. (R. 87-7, Fischer Aff., PID# 1712, ¶ 13 (emphasis added).) The sheriff's affidavit shows that he either does not understand the County policy or consciously violates it. The document retention schedule clearly requires that videotapes be retained for five days—not destroyed within that time. In the end, the County's own policy and Defendants' own testimony create a genuine issue of fact concerning their willfulness in destroying the tape. A jury will have the final word on this claim.

### E.        Civil Conspiracy

Under Ohio law, a claim for civil conspiracy requires "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995) (internal quotation marks omitted). "A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Morrow v. Reminger & Reminger Co., L.P.A.*, 915 N.E.2d 696, 711–12 (Ohio Ct. App. 2009). The district court dismissed this claim since it concluded that summary judgment was appropriate on Plaintiffs' spoliation cause of action—a decision we reverse.

In the alternative, Defendants argue that we should dismiss Plaintiffs' conspiracy claim pursuant to the intracorporate conspiracy doctrine. This doctrine provides that "members of the same legal entity cannot conspire with one another as long as their alleged acts were within the scope of their employment." *Jackson v. City of Columbus*, 194 F.3d 737, 753 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002). Because this issue was scantly briefed by the parties and raises several novel issues of Ohio law, we decline to rule on the issue at this time. The district court may address the parties' arguments in the first instance on remand.

## CONCLUSION

For the foregoing reasons, we **REVERSE** in part the judgment of the district court granting Defendants summary judgment on Plaintiffs' § 1983 excessive force claim under the Fourth Amendment, as well as the state law claims of negligence, assault, battery, loss of consortium, intentional infliction of emotional distress, and spoliation of evidence, **VACATE** the judgment as it concerns Plaintiffs' civil conspiracy claim, and **REMAND** for further proceedings consistent with this opinion; we **AFFIRM** with respect to all other claims on appeal.