NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0074n.06

No. 23-1425

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

RENARD MONTEZ AUSTIN; URSULA COOK,

    Plaintiffs-Appellants,

v.

MICHAEL MOSLEY,

    Defendant,

CITY OF DETROIT, MICHIGAN,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

FILED
Feb 10, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

Before: GIBBONS, McKEAGUE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Renard Montez Austin and Ursula Cook bring this action under 42 U.S.C. § 1983 against the City of Detroit. The Plaintiffs seek to impose municipal liability on the City for alleged violations of their constitutional rights committed by a former employee of the Detroit Police Department, Michael Mosley. They allege that Mosley's violative conduct was caused by the City's deliberate failure to train and supervise its officers on proper search warrant procedures, and by the City's custom of tolerating persistent constitutional violations by its officers. The district court granted summary judgment to the City, concluding that the evidence in the record was insufficient as a matter of law to support a finding of municipal liability. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I.     BACKGROUND**

From 2008 to 2012, Officer Mosley was a member of the Narcotics Unit of the Detroit Police Department ("DPD").  At the Narcotics Unit, Mosley received specialized "undercover" training, including training on techniques such as trailing and following suspects, as well as training in court procedures, including search warrants.  Mosley did not, however, receive training regarding the DPD's Policy Manual or the DPD's Standard Operating Procedures, which articulate the DPD's "written guidelines and protocols specific to narcotics enforcement."  R. 65-2, Operation Clean Sweep Report, PageID 1276.  And he never received a copy of either the Policy Manual or the Standard Operating Procedures.  In 2012, Mosley voluntarily left the Narcotics Unit to work in the Headquarter Surveillance Unit.

In 2014, the Federal Bureau of Investigation advised the DPD that multiple members of the Narcotics Unit were being investigated for extorting and robbing individuals suspected of drug dealing.  Based on the investigation's findings, three members of the Narcotics Unit were indicted and convicted of extortion, robbery, and conspiracy to distribute a controlled substance.  In response, then-Chief of Police James Craig disbanded the Narcotics Unit, reassigned its personnel, and created the Major Violators Unit ("MVU").  The MVU was functionally a new, smaller iteration of the Narcotics Unit that contained many of the same personnel.  That same year, Mosley joined the MVU.  It does not appear that the DPD introduced any additional training or protocols for MVU members in response to the FBI investigation and the creation of the MVU.

On October 3, 2018, Mosley prepared a probable cause affidavit to search Ursula Cook's residence in Detroit.  The Plaintiffs allege that Mosley falsified the affidavit, falsely claiming that he witnessed drug transactions at Cook's home.  Based on the affidavit, a magistrate judge issued a search warrant.  That same day, Mosley and a team of officers executed the warrant at Cook's

residence, where Cook and Renard Montez Austin were both present. According to Austin and Cook, Mosley planted evidence during the search and threatened to criminally charge them unless they paid him $10,000, which they refused to do. Austin and Cook were both charged with possession of narcotics and unlawful possession of a firearm. Cook went to trial and was acquitted. Austin initially pled guilty, but his conviction was subsequently vacated on appeal.

On August 22, 2019, Mosley was federally indicted for taking bribes from drug dealers. That same day, then-Chief Craig opened a sweeping investigation into allegations of corruption and misconduct in the MVU, called "Operation Clean Sweep." The Operation Clean Sweep Task Force ("OCSTF") reviewed "all records pertaining to narcotics investigations from 2009 through 2019." R. 65-2, Operation Clean Sweep Rep., PageID 1151. On November 26, 2021, the DPD published a report on OCSTF's findings. *Id.* at PageID 1145. According to the report, OCSTF found that numerous officers in the MVU engaged in serious misconduct, including falsification of search affidavits, overtime fraud, forgery, and perjury. OCSTF identified multiple search warrant affidavits that contained false information, and it uncovered multiple instances in which officers lied about their informants and their surveillance practices. OCSTF also found that there was no supervisory review of search warrant affidavits within the MVU. Based on these findings, OCSTF referred several members of the MVU for criminal prosecution.

On October 29, 2020, Austin and Cook sued the City of Detroit, Mosley, and the DPD. They subsequently agreed to dismissal of their claims against the DPD and Mosley, leaving only the § 1983 claim against the City. On March 29, 2023, the district court granted summary judgment to the City on the ground that the Plaintiffs failed to adduce evidence upon which a reasonable jury could find municipal liability. The Plaintiffs timely appealed.

## II.    ANALYSIS

This court reviews a district court's order granting summary judgment de novo. *King v. Steward Trumbull Mem'l Hosp. Inc.*, 30 F.4th 551, 559 (6th Cir. 2022). Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(aa)). The court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Austin and Cook allege that "Mosley's acts of falsifying the affidavit in support of the operative search warrant and executing the search warrant that he accordingly knew lacked the requisite probable cause . . . violated [their] fundamental constitutional rights under the 4th, 8th and 14th Amendments." R. 1, Compl., 7. The City does not dispute that there is, at the very least, a genuine issue of material fact as to whether Mosley violated the Plaintiffs' constitutional rights. In turn, the Plaintiffs seek to hold the City liable for Mosley's alleged violations.

Municipalities may be held liable under § 1983 for deprivations of a plaintiff's rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). To establish municipal liability under what is commonly known as a *Monell* claim, the plaintiff must show that the municipality's "policy or custom" caused the violations of his or her rights. *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017). The municipality's "deliberate action" must have been the "moving force" behind the violation. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997). A plaintiff may raise four distinct theories of municipal liability: (1) the existence of an illegal official policy or legislative enactment, (2) ratification of an illegal decision by an official with final decisionmaking authority, (3) the existence of a policy of inadequate training or supervision, and (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Jackson*

*v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). Each of these theories "come with different elements and different evidentiary burdens." *Woodall v. Wayne County*, No. 20-1705, 2021 WL 5298537, at *6 (6th Cir. Nov. 15, 2021).

The Plaintiffs rest their *Monell* claim on the third and fourth theories: failure to train and supervise and a custom of tolerating constitutional violations. *See* Appellant Br. 24-27. We address each in turn.

### A.  Policy of Inadequate Training or Supervision

To establish municipal liability based on a failure to train or supervise, a plaintiff must show that (1) the municipality's training or supervision was inadequate for the tasks that its officers must perform, (2) the inadequacy was the result of the municipality's deliberate indifference, and (3) the inadequacy was closely related to or caused the constitutional injury. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286-87 (6th Cir. 2020).

#### 1.  Failure to Train

Austin and Cook base their failure-to-train claim on the City's allegedly deficient training regarding search warrant procedures. *See* Appellant Br. 24-25; R. 1, at 7-8. They point to evidence that, although Mosley received some training on preparing search warrant materials, he never received training regarding, or copies of, the DPD's Policy Manual or Standard Operating Procedures. They also cite evidence that other officers never received copies of the Standard Operating Procedures. The City, they contend, deliberately ignored these training infirmities, which resulted in Mosley's violation of their constitutional rights.

We need not reach whether the Plaintiffs have raised sufficient evidence of deficient training—the deliberate indifference prong is dispositive of their failure-to-train claim. To prove that a municipality was deliberately indifferent to inadequate training, a plaintiff is generally

required to show either (1) prior instances of unconstitutional conduct demonstrating that the City had notice that its training in that particular area was deficient and likely to cause injury, and did not act in response; or (2) a single violation of rights, accompanied by evidence that the City failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. *Jackson*, 925 F.3d at 836.

Here, Austin and Cook confirmed at argument that they rely on the first theory of deliberate indifference. Thus, to raise a triable issue of fact as to deliberate indifference, they were required to provide evidence that, as of October 2018—the time of Mosley's alleged constitutional violations—the City was on notice of a "pattern of similar constitutional violations." *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *accord Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005) (noting that the plaintiff generally must show "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in th[e] particular area was deficient and likely to cause injury"). The Operation Clean Sweep investigation, which uncovered multiple instances in which officers in the MVU falsified search affidavits, began in 2019, and its findings were published in 2021. Thus, the investigation and report do not constitute evidence that the City was on notice in 2018 of its officers' misconduct in the search warrant process and the corresponding need for better training in that area. The same holds true for Mosley's indictment, which occurred in 2019, one year after the alleged violations.

The Plaintiffs point to the 2014 FBI investigation into the Narcotics Unit and the consequent indictment and conviction of three of its officers, which resulted in the disbandment of the Narcotics Unit and the creation of the MVU. *See* Appellant Br. 25. But there is no evidence in the record that the FBI found a pattern of falsification of search affidavits or similar misconduct

in the search warrant process. The three officers ensnared by the 2014 investigation were ultimately charged with robbing and extorting drug dealers and selling controlled substances. The Plaintiffs do not point to any allegations that these officers falsified search affidavits or engaged in similar misconduct relating to the search warrant process.

Even viewing the record in the light most favorable to the Plaintiffs, there is insufficient evidence upon which a reasonable jury could find that the City was on notice of prior instances of similar violations demonstrating that its training regarding the search warrant process was deficient and likely to cause injury. The district court, therefore, did not err in granting summary judgment to the City on the failure-to-train claim.

### 2. Failure to Supervise

Like the failure-to-train claim, Austin and Cook base their failure-to-supervise claim on inadequacies in the DPD's supervision over the search warrant process. *See id.*; R. 1, at 7-8. Indeed, the Operation Clean Sweep report identified the lack of "supervisory review of search warrants" as a main "area[] of concern." R. 65-2, PageID 1348. The City, Plaintiffs argue, deliberately ignored this problem. They also suggest that the DPD's decision to staff the MVU with personnel from the Narcotics Unit and its unwillingness to create new supervisory positions and safeguards following the 2014 FBI investigation constitute further evidence that the City's supervision was deficient and that it deliberately ignored such deficiencies. Once again, we need not determine whether the City's supervision was inadequate because the deliberate indifference prong is dispositive.

The test for deliberate indifference in the failure-to-supervise context mirrors the test in the failure-to-train context. *See Morgan v. Wayne County*, 33 F.4th 320, 329 (6th Cir. 2022). To prove deliberate indifference to inadequate supervision, plaintiffs are generally required to show

either (1) a pattern of unconstitutional conduct demonstrating that the municipality was on notice that its supervision of its employees was inadequate and likely to cause injury, but did nothing; or (2) a single violation of rights, accompanied by evidence that the failure to supervise presented an obvious potential for such a violation. *Id.*; *Jackson*, 925 F.3d at 836. As with the failure-to-train claim, the Plaintiffs' failure-to-supervise claim relies on the first theory.

On this record, for largely the same reasons as the failure-to-train claim, Austin and Cook have not proffered evidence sufficient to raise a triable issue as to deliberate indifference. The Operation Clean Sweep finding that there was a lack of supervision over the warrant process was not published until 2021, and the underlying investigation began in 2019. The only pre-2018 evidence cited by the Plaintiffs is the 2014 FBI investigation and the resultant convictions. As discussed above, the Plaintiffs have not adduced any evidence that the investigation or its resulting convictions involved falsification of search affidavits or similar misconduct regarding the search warrant process. A reasonable jury could not find that the City was on notice of prior instances of "similar" violations demonstrating deficient supervision over the warrant process. *Connick*, 563 U.S. at 62. The district court did not err in granting the City summary judgment on Plaintiffs' failure-to-supervise claim.

### B. Custom of Tolerance or Acquiescence

Austin and Cook also assert that the City had a custom of tolerating or acquiescing to constitutional violations by its officers. To establish municipal liability based on a "custom" theory, a plaintiff must show:

> (1) the existence of a clear and persistent pattern of illegal activity; (2) notice or constructive notice on the part of the defendant; (3) the defendant's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the

defendant's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Wallace v. Coffee County*, 852 F. App'x 871, 876 (6th Cir. 2021) (cleaned up) (citing *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)). To show notice of a pattern of illegal activity, a plaintiff must proffer evidence that the municipality was aware of past conduct "similar" to the violative conduct alleged in the case at bar. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

As noted above, the Plaintiffs' alleged constitutional deprivations are based specifically on "Mosley's acts of falsifying the affidavit in support of the operative search warrant and executing the search warrant that he accordingly knew lacked the requisite probable cause." R. 1, at 7. The Plaintiffs were thus required to adduce evidence that the defendants were on notice of, and deliberately ignored, prior instances of similar illegal conduct. *Burgess*, 735 F.3d at 478-79. Such prior conduct need not be identical, but it must be sufficiently similar to the violative conduct alleged here, such that a reasonable jury could find that the City effectively permitted its officers to abuse the search warrant process. *Id.* The Plaintiffs rely heavily on the 2014 FBI investigation, arguing that it shows a generalized pattern of illegal activity in the DPD and the failure of the City to take action to stop that activity. But, as discussed above, they have not proffered evidence showing that the 2014 investigation and the resultant convictions involved conduct similar to the violative conduct alleged in this case. The 2014 investigations and convictions are thus insufficient to show that the City had "notice or constructive notice" that its employees were falsifying search affidavits or that the City "failed to act regarding other [officers] in similar circumstances." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429, 433 (6th Cir. 2005). And governing precedent

specifies that evidence postdating the alleged constitutional violations cannot be used to establish notice and deliberate indifference.

Austin and Cook have not raised a genuine issue of material fact as to whether the City had a custom of tolerance or acquiescence of the federal rights violations alleged in this case. The district court did not err in granting the City summary judgment on the custom claim.

\*     \*     \*

Operation Clean Sweep laid bare serious corruption and misconduct within the DPD. Indeed, the Plaintiffs' allegations, if true, indicate that they were the victims of egregious police misconduct. But a viable *Monell* claim, on the theories pled and maintained by Plaintiffs here, arising out of Operation Clean Sweep would require some evidence that the municipality was aware of prior misconduct similar to the violative conduct alleged in the complaint. Although the allegations in this case are profoundly troubling, the Plaintiffs have not proffered evidence sufficient to support their specific theories of *Monell* liability.

## III.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.