NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1277n.06

No. 12-5172

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Dec 11, 2012*

DEBORAH S. HUNT, Clerk

ROBERT REED, JR., et al.,                )
                                         )
    Plaintiffs-Appellants,               )
                                         )
v.                                       )     ON APPEAL FROM THE UNITED
                                         )     STATES DISTRICT COURT FOR
LISA SPECK, et al.,                      )     THE   MIDDLE  DISTRICT  OF
                                         )     TENNESSEE
    Defendants-Appellees.                )
                                         )
_____        OPINION

Before:  NORRIS, GIBBONS,  and  DONALD, Circuit Judges.

**Bernice B. Donald**, Circuit Judge.  Robert Reed, Jr., Mattie Reed, and Artavius Reed,

individually and on behalf of the estate of Andron Reed ("Reed"), filed suit under 42 U.S.C. § 1983

against Defendants Lisa Speck and John D. Rudd, M.D.,[1] alleging a violation of the Eighth

Amendment for failure to provide Reed with proper medical treatment, indifference to his physical

and mental health needs, and using excessive force in restraining him.  Plaintiffs also brought claims

alleging negligence, battery, intentional infliction of emotional distress, and violations of the United

Nations Universal Declaration of Human Rights and the United Nations Convention Against Torture.

---

[1]Plaintiffs also brought suit against Rutherford County, Tennessee; the Rutherford County Sheriff's Department; Truman Jones, Jr., individually and in his official capacity as sheriff; and several department deputies.  The parties entered into a stipulated dismissal with prejudice, and these defendants were dismissed.

The district court granted Defendants' motion for summary judgment on all claims. For the following reasons, we AFFIRM.

I.

On August 14, 2009, Reed and his brother Artavius were pulled over by a Tennessee State Trooper on Interstate 24 in Rutherford County, Tennessee. The trooper arrested both men on a traffic violation and other criminal charges and took them to the Rutherford County Detention Center for booking. After refusing to provide information during the booking process, Reed was placed in a cell by himself. Several hours later, Reed began banging on the cell door to get the attention of the deputies. An altercation between Reed and the deputies ensued. In an effort to subdue Reed, the deputies used pepper spray, placed Reed in handcuffs and shackles, and covered his head with a spit net.

Because the deputies' actions constituted a "use of force" against Reed, Lisa Speck, a licensed practical nurse, was called to the booking area to evaluate him. When Speck arrived at booking, she observed the deputies placing a combative Reed in a restraint chair. At that time, she did not have a concern that Reed was experiencing a medical emergency and determined that an exam was not necessary. After the restraints were put on Reed, Speck checked to make sure that they were not too tight. Reed was then removed to a cell, and Speck observed him from just outside the cell. Speck testified that it was unnecessary to remove the spit net to observe Reed. Speck monitored Reed's respirations by watching the rising and falling of his chest and observed no

distress at this time. Speck continued to monitor Reed's respirations, each observation lasting for approximately one minute.

Shortly thereafter, Speck noticed that Reed's breathing was heavy. She entered the cell to check his vitals but could not get a proper reading. Reed was unresponsive and appeared to have lost consciousness. Speck then asked the deputies to remove him from the restraints, place him on the floor, and to take off the spit net. Reed's pulse was "thready" and his respirations were shallow. Soon after, Speck did not detect a pulse and instructed the deputies to call an ambulance. While awaiting the ambulance, Speck and Deputy Stone commenced CPR on Reed. After the ambulance left the detention center, Speck called her supervisor, Dr. Rudd, to inform him that Reed was taken to a hospital. Rudd was not at the detention center when the events took place.

Later, at the hospital, Reed was pronounced dead. An autopsy was performed on Reed, which revealed that he had a heart condition and died of natural causes.

Appellants brought suit under 42 U.S.C. § 1983 for failing to provide Reed with proper medical treatment, indifference to his physical and mental health needs, and using excessive force in restraining him. Appellants also brought claims alleging negligence, battery, wrongful death, intentional infliction of emotional distress, and violations of the United Nations Universal Declaration of Human Rights and the United Nations Convention Against Torture. Appellants also brought a claim against Rudd and Speck for medical malpractice, but that claim was dismissed by the district court for noncompliance with Tennessee's medical malpractice notice requirement.

Appellants now appeal the district court's grant of summary judgment to Appellees on their claims for deliberate indifference and intentional infliction of emotional distress. They also appeal the denial of their motion to file a fourth amended complaint, the decision not to grant an exemption from the medical malpractice notice requirement, and an award of court costs to the Appellees.

II.

We review a district court's grant of summary judgment de novo. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894-85 (6th Cir. 2004). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Blackmore*, 390 F.3d at 895.

A. Deliberate Indifference

Appellants allege that Speck violated their Eighth Amendment rights by acting with deliberate indifference to Reed's medical needs because she knew of a health risk to Reed, or should have perceived a risk sooner than she did, and should have responded differently to Reed's medical situation. Appellees assert that, even if true, this is insufficient to establish a cause of action for deliberate indifference.

"While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is

- 4 -

analogous to prisoners' rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 612, 615-16 (6th Cir. 2005). A detainee's right is violated "when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). As the Supreme Court explained, "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Blackmore*, 390 F.3d at 895 (6th Cir. 2004). Deliberate indifference entails more than mere negligence, but "is satisfied by something less than acts or omission for the very purpose of causing harm." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010).

There is an objective and a subjective component to a deliberate indifference claim. The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. We have recognized that "[a] serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897. The subjective component requires that the accused have a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, a plaintiff must show that the prison official "subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Comstock*, 273 F.3d at 703). The subjective component is intended "to prevent the constitutionalization of medical malpractice claims." *Id*. (internal quotations omitted).

Appellants argue that Speck knew Reed had a serious medical need, and thus the objective component is satisfied. In support of this contention, Appellants cite to the following facts: Speck witnessed officers use force to put Reed into a restraint chair, she saw that his head was covered by the spit net and that he had handcuffs and shackles on, and she smelled pepper spray in the air. Appellants admit, however, that Reed did not have any bruising or injuries and that Speck had not read Reed's chart to know that his blood pressure was elevated. Appellants also claim that Speck's statement to Deputy McBroom that she did not like the way that Reed was breathing supports their contention that his serious medical need was obvious. We disagree.

Appellants do not assert that Speck knew of any pre-existing medical condition of Reed that mandated treatment. Moreover, Appellants do not put forth any evidence showing that it was obvious at the moment Speck first encountered Reed that he was in serious need of medical attention. Speck works at an adult detention facility where combative inmates and uses of force to subdue these inmates are commonplace. Simply witnessing an aggressive inmate being put into restraints does not rise to the level of obvious medical need as it relates to the objective component. The evidence shows that Reed was breathing, conscious, and communicative when Speck first encountered him. Reed did not display any outward signs that he required immediate medical attention, nor did he ask for medical assistance. In fact, he refused to give the detention center personnel his medical history. Thus, the objective component of a deliberate indifference claim is lacking.

Appellants next contend that Speck's allegedly negligent acts combined are sufficient to satisfy the subjective component of a deliberate indifference claim. Appellants assert that the

allegedly negligent acts include Speck not removing the spit net from Reed's head and failing to properly assess Reed's medical emergency at the onset. The spit net is administered and regulated by the deputies at the correctional facility for safety and security; the decision to apply or remove the net is not under the purview of the nurses responsible for detainee healthcare. When Speck ultimately noticed an issue with Reed's breathing, she asked the deputies to remove the spit net, and they did. Additionally, Speck and all of the deputies involved in the incident testified that they could see Reed's face through the net the entire time, and Speck testified that his breathing did not appear to be complicated by the net. Appellants do submit expert witness testimony that Speck failed to assess the emergency at the onset, however, an expert witness's opinion testimony is insufficient to establish the subjective component. *LeMarbe v. Wisneski*, 266 F.3d 429, 441-42 (6th Cir. 2001); *Campbell v. Sikes*, 169 F.3d 1353, 1371 n.22 (11th Cir. 1999) (finding that the affidavit of an expert does not support a finding of deliberate indifference . "[T]he official's conduct is judged by what he actually knew, not by what a reasonable person in his shoes would have known.") (quoting *McKee v. Turner*, No. 96-3446, 1997 WL 525680, at *4 (6th Cir. Aug. 25, 1997)).

Appellants cite *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994), to support their argument that combined acts of negligence suffice for the subjective component of a deliberate indifference claim. However, *Brooks* is not only distinguishable from this case but is also mischaracterized by Appellants. *Brooks* involved a class action suit brought by inmates alleging that a prison doctor's repeated failure to conduct proper physical examinations and prescribe necessary medication were acts of negligence amounting to deliberate indifference. Relying on *Farmer*, *Brooks* held that using

repeated acts of negligence as circumstantial evidence is proper, but the repeated acts alone could not constitute deliberate indifference. *Brooks*, 39 F.3d at 129. "A failure to act as a reasonable person would have acted, does not by itself equal deliberate indifference." *Id*. Acting incompetently is not the same as acting wantonly. *Id*.

Ultimately, Appellants have alleged facts against Speck amounting, at most, to either negligence or medical malpractice. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at106; *see also Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). As the district court found, Appellants have failed to put forth evidence showing that Speck acted with the necessary wanton and reckless disregard to Reed's medical needs to support a constitutional claim for deliberate indifference. In fact, the evidence shows otherwise.

Speck checked Reed's restraints to make sure they were not too tight, continuously monitored Reed's breathing, attempted on more than one occasion to get a reading on his vital signs, including checking his oxygen levels, and listened to his chest with her stethoscope multiple times to check for wheezing. When she was unable to thoroughly examine Reed, Speck promptly had the deputies remove the restraints so that she could better assess his condition. When Reed was verbally unresponsive to Speck, Speck asked the officers to take him out of the restraint chair and lay him on the ground. When Speck noticed Reed's pulse was "thready," she administered oxygen and retrieved

a "crash cart." Speck then realized Reed no longer had a pulse and immediately instructed Deputy Stone to begin chest compressions while she called for an ambulance and then returned to Reed to continue CPR until the paramedics arrived. Appellants do not dispute these facts but argue that Speck should have performed some of these acts sooner. However, as noted, any errors in her response are insufficient to establish liability for deliberate indifference unless she knew there was an earlier risk and disregarded it with the knowledge that it would cause harm to Reed. The record does not support such a finding. The district court therefore correctly granted Speck's motion for summary judgment on the deliberate indifference claim.

### B. Vicarious Liability

Appellants further argue that Dr. Rudd should be held vicariously liable for Speck's actions because he failed to adequately train or supervise her. "Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). More than simple negligence and a right to control employees is required to find liability. *Gregory*, 444 F.3d at 751. To succeed on a failure to train or supervise claim, a plaintiff must show that the supervisor "encouraged the specific incident of misconduct or in some other way directly participated in it." *Comstock v. McCrary*, 273 F.3d 693, 712-13 (6th Cir. 2001). Rudd was unaware of the events that took place until Speck called him after Reed had been transported to the hospital. Appellants have not put forth evidence suggesting that Rudd condoned or encouraged Speck to withhold medical care from Reed.

Furthermore, although Appellants contend that Speck's training was inadequate, she was a licensed practical nurse with an up-to-date certification in Basic Life Support ("BLS"), as required by all nurses who work for Rudd. Even Appellants' expert testified that if she was current in her BLS certification, she would have been properly trained for the events that occurred. Appellants also cannot establish that Rudd was deliberately indifferent to whether his staff was adequately trained. It is undisputed that Rudd required his nurses to be current on their BLS certification. As Appellees point out, there is no evidence that Rudd knew of a risk of harm regarding Speck's training and disregarded that risk. Therefore, Rudd was entitled to summary judgment.

### C. Intentional Infliction of Emotional Distress

Artavius Reed, the decedent's brother, also brought a state law claim for intentional infliction of emotional distress against Speck. Artavius argues that as a result of Speck's actions, he has suffered symptoms of severe emotional distress such as nightmares and difficulty sleeping, concentrating at work, and going about his normal routine. The specific acts by Speck that Artavius claims led to this distress were hearing his brother being beaten by deputies, smelling the pepper spray, observing the deputies putting restraints on his brother, and asking him about his brother's medical history and possible drug use.

To sustain a claim of intentional infliction of emotional distress in Tennessee, a plaintiff must show that the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in a serious mental injury to the plaintiff. *Rogers v.*

*Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012). First, Artavius Reed does not present any evidence that Speck's actions intended to cause him harm or were recklessly indifferent to the risk of causing him harm. Next, his assertion that Speck's actions were intolerable by a civilized society are without merit. Speck is a nurse who commonly assesses inmates' medical histories, and the deputies, not Speck, were responsible for the use of pepper spray and restraints. Lastly, Tennessee courts have defined a serious mental injury as one in which "the distress is so severe that no reasonable [person] could be expected to endure it." *Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004) (internal quotations omitted). It is not unreasonable that the loss of a loved one would cause sleeplessness, nightmares, and depression. Accordingly, Artavius's claim that no reasonable person could be expected to endure these symptoms is not enough to support a claim for intentional infliction of emotional distress. The district court properly granted summary judgment to Speck on this claim.

D. Motion to Amend Complaint

Appellants also argue that the district court should have granted their motion to file a fourth amended complaint, which they contend sought to clarify issues and conform to the evidence to be presented to the jury. The magistrate judge denied their motion, finding that "to allow the amendment sought by Plaintiffs after the close of both fact and expert discovery and the expiration of the deadline for filing dispositive motions would work an undue prejudice upon Defendants." We review a district court's decision regarding a motion to amend under Federal Rule of Civil Procedure 15(a) for abuse of discretion. *Brooks*, 39 F.3d at 130.

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a pleading "should be freely given when justice so requires." A court may consider the following factors when deciding whether to grant leave to amend: undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment. *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989).

The magistrate judge did not abuse his discretion by denying Appellants' motion to file a fourth amended complaint. While delay alone is not a sufficient basis for denying leave to amend, *Moore v. City of Paducah*, 790 F.2d 557, 560 (6th Cir. 1986), the magistrate judge also cited Appellants' two previous amendments and the undue prejudice that would result given that discovery was closed and the deadline for filing dispositive motions had passed. Taken together, these are sufficient grounds to deny leave to amend a complaint. *See id*.

E. Medical Malpractice Notice Requirement

The district court dismissed Appellants' medical malpractice claim for failure to comply with Tennessee's pleading requirements for a medical malpractice action. We review a district court's decision to dismiss a complaint for failure to comply with the notice requirement under an abuse of discretion standard. *Nafzinger v. McDermott Intern, Inc.*, 467 F.3d 514, 519 (6th Cir. 2006).

Appellants argue that they could not comply with the pleading requirements for a medical malpractice liability action under Tennessee law due to time constraints, and thus the district abused

its discretion in failing to grant an exception for this case. Appellants contend that in order to comply with the deadline of the original case management order, they did not have time to also comply with the notice and certification requirement of Tenn. Code Ann.§ 29-26-121. In response, Speck asserts that because, absent "extraordinary cause," the Tennessee statute requires mandatory compliance with the notice and certification requirement, the district court did not abuse its discretion in denying Reed's request.

The Tennessee statute at issue requires that:

> Any person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before filing of a complaint based upon health care liability in any court of this state.

Tenn. Code Ann. § 29-26-121(a)(1). Tennessee further requires that a "certificate of good faith" indicating that a medical expert has reviewed the claims must also be filed with a medical malpractice complaint, and failure to do so absent extraordinary cause shall result in dismissal of the complaint with prejudice. Tenn. Code. Ann. §§ 29-26-122 (a), (c).

The notice and certification requirements in any medical malpractice action in Tennessee are mandatory, *Brandon v. Williamson Med. Ctr.*, 343 S.W.3d 784, 790 (Tenn. Ct. App. 2010), and a trial court may exercise "discretion to excuse compliance . . . only for extraordinary cause." Tenn. Code Ann. § 29-26-121(b). Tennessee courts have interpreted "extraordinary cause" as "going beyond what is usual, regular, common, or customary." *Meyers v. AMISUB (SFH), Inc.,* 2012 WL

4712152, at *7 (Tenn. Oct. 4, 2012). Tennessee courts have equated "extraordinary cause" with "excusable neglect." *See Brandon*, 343 S.W.3d at 790. In *Brandon*, the court held that a *pro se* plaintiff's inability to secure expert testimony did not justify good cause to excuse her compliance with the filing requirements, for forces within a party's control will not substantiate a claim of excusable neglect. *Id*.

Presently, neither party disputes that Appellants failed to comply with the sixty-day notice requirement or file a certificate of good cause. Appellants assert that the district court abused its discretion for failure to grant "extraordinary cause" because they did not know about Speck's identity until after filing their initial claim. Appellants' failure to file the notification and certificate of good faith does not excuse noncompliance or constitute good cause, excusable neglect, or extraordinary cause. Appellants had the means to timely file a notice requirement and a certificate of good faith before filing their motion to amend the complaint to add Speck as a defendant and simply failed to do so. Because Appellants have failed to demonstrate compliance with the mandatory Tennessee statute or show "extraordinary cause" to excuse compliance, the district court properly held that Appellants failed to plead a claim for medical malpractice. Thus, the district court was justified in dismissing the claim.

F. <u>Assessment of Court Costs</u>

We review a district court's award of costs under an abuse of discretion standard. *Singleton v. Smith*, 241 F.3d 534, 538 (6th Cir. 2001) (citing *Jones v. Continental Corp.*, 789 F.2d 1225, 1233

(6th Cir. 1986). Award decisions involve a fact-intensive determination, and a district court's determination of those facts is entitled to substantial deference. *See Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 551 (6th Cir. 2008).

Federal Rule of Civil Procedure 54(d) provides that costs other than attorney fees shall be allowed as of course to the prevailing party unless the court otherwise directs. We have determined that the language of Fed. R. Civ. P. 54 "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). In *Chambers v. Ohio Dept. of Human Services*, 273 F.3d 690, 692-693 (6th Cir. 2001), we determined that an award is appropriate where a plaintiff has obtained an "enforceable judgment[] on the merits or a court-ordered consent decree[]."

Appellants argue that the district court's award did not distinguish between court costs incurred prior to a settlement reached between the parties, and those incurred afterwards. Appellants also contend that they should be considered a "prevailing party" because the parties reached an out-of-court settlement.

Pursuant to a settlement agreement, Defendants Rutherford County Sheriff's Department, Truman Jones, Jr., individually and in his official capacity as sheriff, and several department deputies were dismissed. The court-approved stipulation of partial dismissal indicated that each party was responsible for its own litigation costs. Thus, Appellants' argument that they should be awarded court costs as a prevailing party as it relates to the stipulated dismissal is without merit.

Further, the record makes clear that only Defendants Speck and Rudd sought court costs as prevailing parties after the district court granted summary judgment in their favor. The motion for costs was submitted by the attorney for Speck and Rudd, not the attorney for the dismissed defendants. Speck's and Rudd's attorney submitted an affidavit and exhibits to the court detailing the court costs incurred, and those are the costs that the district court ultimately awarded. Accordingly, the district court did not abuse its discretion in assessing court costs to Reed.

III.

For the foregoing reasons, we affirm the judgment of the district court.