NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0154n.06

No. 14-3157

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 26, 2015
DEBORAH S. HUNT, Clerk

CHRISTINA SMITH,                                    )
                                                   )
    Plaintiff-Appellant,                          )    ON APPEAL FROM THE
                                                   )    UNITED STATES DISTRICT
v.                                                 )    COURT FOR THE NORTHERN
                                                   )    DISTRICT OF OHIO
ERIE COUNTY SHERIFF'S                              )
DEPARTMENT, *et al.*,                              )
                                                   )
    Defendants-Appellees.                         )


BEFORE: COLE, Chief Judge; KEITH and BATCHELDER, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.** Christina Smith appeals the judgment of the district court dismissing her claims for failure to provide treatment for a serious medical need and supervisory and municipal liability. On January 1, 2012, Smith's mother, Margaret Stallard, was arrested for disorderly conduct-intoxication. While in custody, Stallard died. An autopsy determined that Stallard ingested a lethal mixture of prescription medication prior to arrest, causing her unfortunate death. Smith filed suit alleging a 42 U.S.C. § 1983 ("§ 1983") claim, in violation of the Fifth, Eighth, and Fourteenth Amendments, as well as three additional state law claims. She also sought attorney's fees and expenses under 42 U.S.C. § 1988 ("§ 1988"). Defendants moved to dismiss all claims on the ground that there was neither an Eighth nor Fourteenth Amendment violation. The district court held that the Fourth, not the Eighth or Fourteenth Amendments applied, because Stallard was not a convicted prisoner and the alleged violation occurred prior to a probable cause hearing, respectively. The district court found that

the failure to provide medical treatment was reasonable under the Fourth Amendment; it did not decide whether there was a Fourteenth Amendment violation. Because the district court found no constitutional violation, it dismissed Smith's Complaint. We **AFFIRM** the district court's judgment.

## I.      BACKGROUND

### A.  FACTUAL BACKGROUND

On January 1, 2012, at 4:00 a.m., Sergeant Mark Kusser, a Perkins Township officer, was dispatched to respond to a report that a truck was being broken into. When Sgt. Kusser arrived at the reported location, he saw Stallard sitting inside the truck with the passenger door open. As Sgt. Kusser walked towards the truck, he immediately recognized Stallard from a prior disorderly conduct arrest involving alcohol intoxication. When Sgt. Kusser approached Stallard, he asked her for identification. Stallard attempted to respond, but her speech was slurred and she could not properly identify herself. When Sgt. Kusser smelled alcohol on Stallard's breath and observed that Stallard did not have shoes on her feet, he arrested her for disorderly conduct-intoxication.

Sgt. Kusser then searched Stallard's purse and found a checkbook that properly identified her. Sgt. Kusser testified that he did not inventory items in the purse and does not recall its contents. Stallard was transported to, booked, and detained at the Erie County Jail (the "Jail"), not Perkins's because it was under construction.

The booking footage shows that, as the door to the Jail opens, Officer Brittany Hausman immediately asks, "Ma'am, are you suicidal?" Stallard responds, "No." Stallard continues to

walk into the Jail guided by Sgt. Kusser, who has his right hand on Stallard's back. Hausman directs Stallard to face the wall; she does. Hausman begins patting and searching Stallard. Initially, Stallard stands without assistance. But as Stallard begins to lean forward, Hausman calls Officer Kyle Bellamy to hold Stallard upright while she completes the search. Stallard complies with the search, but when Hausman attempts to take Stallard's coat off, she asks, "Why can't I keep it?" Stallard stands without assistance and is alert for the remainder of the search; she even asks for "pop." When the search is complete, Hausman guides Stallard—who walks without assistance—farther into the Jail. The video footage ends.

After securing Stallard in a cell, Hausman searched Stallard's purse and found two bottles of pills prescribed to her. Jail policy prohibited officers from opening the bottles or counting pills. Even though Jail policy requires officers to notify supervisors and/or medical staff if medication is found during booking, Hausman did not notify anyone, nor did she question Stallard about the prescriptions. Hausman says that her experience led her to believe that further questioning would be futile because intoxicated individuals are not usually truthful about usage. Hausman, however, did document on Stallard's medical evaluation form that Stallard possessed the prescription medications Alprazolan and Amtriptyline. She then placed the form in the Jail nurse's box, whose shift was due to start at 7 a.m. Hausman did not open the pill bottles.

The Jail's security camera shows that Stallard was continuously monitored. Shortly after 8:00 a.m., she was found dead in her cell. An autopsy determined that Stallard overdosed on prescription medication.

## B. PROCEDURAL BACKGROUND

On July 18, 2012, as administrator of her mother's estate, Smith filed suit alleging that Sgt. Kusser, Hausman, and Bellamy (collectively "Individual Defendants") violated her mother's constitutional right to medical treatment, leading to her unfortunate death. She alleges that the Individual Defendants' supervisors, Ken Klamar, Police Chief of Perkins Township, Terry Lyons, Sheriff of Erie County, Todd Dempsey, Erie County Jail Administrator, are liable for Individual Defendants' alleged constitutional violation. Finally, Smith alleges that the municipalities that employ and govern Individual Defendants, Perkins Township Board of Trustees ("Perkins") and Erie County Sheriff's Department and Board of Commissioners (collectively "Erie")) are likewise liable for Individual Defendants' constitutional violation.[1]

Smith pleaded one federal claim; it alleges Fifth, Eighth, and Fourteenth Amendment violations against Defendants. The remaining counts set forth state law claims. Defendants moved for summary judgment. Primarily, Defendants argued that there was no constitutional violation of the Eighth or Fourteenth Amendments because the evidence was insufficient to establish deliberate indifference to a medical need.[2] The district court held that the Eighth Amendment did not apply because Stallard was not a convicted prisoner; it held that the Fourteenth Amendment did not apply because Stallard had not had a probable cause hearing, and thus the district court did not decide whether there was a Fourteenth Amendment violation.

---

[1] Smith alleged claims against additional Defendants that were voluntarily dismissed below. John Doe I, II and III are also Defendants to all Counts; Plaintiff alleges that these individuals are employees of Erie County who "are believed to have participated in maintaining the conditions for custody."

[2] Defendants did not move for summary judgment on the Fifth Amendment claim, but Smith concedes in her Appellate Brief that "The [d]istrict [c]ourt's dismissal of claims arising under the Fifth and Eight Amendments is not appealed." Appellant's Corrected Br. at 2.

Rather, it held that the Fourth Amendment applied and found that the failure to provide medical treatment was reasonable. Finally, the district court held that Smith failed to state a Fifth Amendment violation. Because the district court found no constitutional violation, it dismissed Smith's Complaint. Smith timely appeals the judgment of the district court, challenging only the dismissal of her Fourteenth Amendment claim.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment *de novo*. *Simmonds v. Genessee Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* This requires us to view the evidence and draw all reasonable inferences in favor of the non-moving party. *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). A dispute is genuine if there is evidence "upon which a reasonable jury could return a verdict in favor of the non-moving party." *Id.* A factual dispute is material only if it could affect the outcome of the suit under the governing law. *Id.*

## III.    DISCUSSION

The validity of the district court's judgment hinges on its dismissal of the federal claim. Because there is only one federal claim, if it fails, declining to exercise supplemental jurisdiction over the remaining state law claims, generally, would not be an abuse of discretion. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance of considerations will usually point to dismissing the state law

claims[.]"). Likewise, if Individual Defendants are not liable for a constitutional violation, the claims against their supervisors and the municipalities that employ them fail. *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) ("Where, as here, a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm."). We begin our analysis with the federal claim.

### A. Individual Defendants

#### 1. Failure to Provide Medical Care

Smith's §1983 action is based on the failure to provide medical care. Individual Defendants raise the defense of qualified immunity. Section 1983 is only a vehicle to vindicate rights conferred by the Constitution or laws of the United States; it is not a substantive right. Section 1983 provides a cause of action against a government official who performs discretionary duties in a manner that deprives an individual of a right secured by the Constitution or laws of the United States, if the right was clearly established at the time of the deprivation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a shield to § 1983 liability and, when raised, the burden to show that a defendant is not entitled to qualified immunity shifts to a plaintiff. *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009). To show that qualified immunity is not warranted, a plaintiff must show that: (1) undisputed evidence gives rise to a constitutional violation; and (2) the right was clearly established at the time of the incident. *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). We may consider these steps in any order. *Pearson v. Callahan*,

555 U.S. 223, 236 (2009). Accordingly, we first consider whether the undisputed evidence gives rise to a constitutional violation.

The district court held that the Fourth, not the Fourteenth Amendment controlled the analysis of Smith's claim for failure to provide medical treatment. Generally, to begin a qualified immunity analysis, we articulate which constitutional amendment controls. We need not precisely articulate the controlling standard here, because the undisputed evidence establishes neither a Fourth nor Fourteenth Amendment violation.

The Fourth Amendment objective reasonableness test is an "easier standard for [a] plaintiff to meet" than the Fourteenth Amendment deliberate indifference test. *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001). The Due Process Clause of the Fourteenth Amendment guarantees that pretrial detainees are not unnecessarily and wantonly subjected to pain by jail guards, tantamount to the Eighth Amendment guarantee for convicted prisoners. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001); *see also Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012). The deliberate indifference test has objective and subjective requirements. The objective criterion requires a plaintiff to show a "sufficiently serious medical need." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)) (internal quotation marks omitted). The subjective requirement demands a "showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required." *Burgess*, 735 F.3d at 476 (citing *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).

7

To determine whether there is a Fourth Amendment violation, on the other hand, we apply an objective reasonableness test, looking to the reasonableness of a defendant's actions; we do not consider the underlying intent or motivation of a defendant. *Dunigan v. Noble*, 390 F.3d 486, 493 (6th Cir. 2004); *see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989). The objective reasonableness test requires courts to consider the reasonableness of an officer's actions in light of the totality of the circumstances, and from the perspective of a reasonable officer on the scene, rather than with the advantage of hindsight. *Darrah*, 255 F.3d at 307. Good intent does not mitigate unreasonable actions, as bad intent does not render reasonable behavior unconstitutional. *Dunigan*, 390 F.3d at 493. We balance "the nature and quality of the intrusion on [a plaintiff's] Fourth Amendment interests against the countervailing governmental interests at stake." *Ciminillo v. Streicher*, 434 F.3d 461, 466-67 (6th Cir. 2006).

Thus, behavior that does not rise to the level of a Fourth Amendment violation cannot offend the Fourteenth. *Wilson v. Spain*, 209 F.3d 713 (8th Cir. 2000) (stating that "if Wilson cannot win his case under Fourth Amendment standards, it is a certainty he cannot win it under the seemingly more burdensome, and clearly no less burdensome, standards that must be met to establish a Fourteenth Amendment substantive due process claim") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-54 (1998)). The district court held that there was no Fourth Amendment violation because Individual Defendants acted reasonably, and we agree. If Individual Defendants acted reasonably under the Fourth Amendment, there can be no Fourteenth Amendment deliberate indifference violation. Therefore, our analysis begins and ends with the Fourth Amendment, which has only a reasonableness requirement.

Individual Defendants contend that they reasonably thought Stallard was intoxicated by alcohol, and acted reasonably by securing her in a cell and monitoring her. We find that sworn testimony, substantiated by video footage, supports the conclusion that no reasonable juror could find that it was unreasonable for Individual Officers to think that Stallard had simply drunk too much alcohol and did not need immediate medical attention. Sgt. Kusser testified that when he asked Stallard for identification, Stallard's speech was slurred and she could not even provide her name. More than one officer testified that Stallard smelled like alcohol that night. Further, the video footage shows Stallard in a functional, but disoriented state. The video shows Stallard slightly unsteady on her feet. And, Stallard's speech sounded slurred. Moreover, Sgt. Kusser reasonably assessed Stallard's condition based on her prior arrest for alcohol intoxication. In a conversation with Hausman, Sgt. Kusser says "I dealt with her a couple months ago. She was pounding on some lady's door trying to get in. She was drunk then too." Sgt. Kusser's testimony establishes that Stallard's behavior on the night of her death was consistent with her prior episode of alcohol intoxication. This similar behavior strongly supports Individual Defendants' inference that Stallard was intoxicated by alcohol again. On the whole, the facts establish that it was not error for the district court to conclude that no reasonable juror could find that it was unreasonable for Individual Officers to think that Stallard was intoxicated by alcohol and in no need of immediate medical care.

Smith, however, argues that it was obvious that her mother was more than merely intoxicated by alcohol and that a reasonable juror could find the failure to provide immediate medical attention was unconstitutional. Smith maintains that Individual Defendants' belief that

her mother was intoxicated by alcohol was refuted by the fact that her mother exhibited debilitating mobility, possessed prescription medication, and denied drinking alcohol.[3] We address each argument in turn.

Video footage contradicts Smith's argument that her mother exhibited debilitating mobility. The video shows that Stallard walked unassisted into the Jail, to the wall where she is searched, and farther into the Jail when the search was completed. The video footage also shows that Stallard stood during the entire search. And, the video shows that, when prompted, Stallard responded to Hausman's commands to move in a specific direction. Because the video footage contradicts Smith's assertion, we afford no weight to her argument that her mother exhibited debilitating mobility. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

The confiscation of prescription medication does not alter the conclusion that there was no constitutional violation. Nothing in the record supports a finding that Individual Defendants knew or should have known that Stallard had ingested prescription medication. Stallard was not foaming at the mouth. Her pupils were not dilated. And, she was not convulsing. Rather, Stallard was functional enough to follow commands until the search was completed. Stallard complied with Hausman's request to move towards a wall, and a request to raise her arm. She

---

[3] Smith offers expert testimony who opined, among other things, that Stallard's condition was severe and required medical attention, and Stallard was unable to stand during the search. The district court did not consider the expert testimony. We do, and find it contradicted by the video and insufficient to create a factual dispute. *See Daubert v. Merrell Dow Pharms*., 509 U.S. 579, 596 (1993).

also complied with a request to walk in a specific direction. And while no one questioned Stallard about her prescription medication, Smith does not argue that either Individual Defendant had the duty to do so, even after discovering her prescriptions. For these same reasons, Stallard's apparent intoxication, but denial of drinking alcohol, does not establish that it was unreasonable for Individual Defendants to fail to provide immediate medical attention. No reasonable juror could conclude that Stallard appeared to be so intoxicated that she needed immediate medical attention.

This conclusion is true even though the policy requiring that the shift supervisor be contacted when prescription medication is confiscated at booking was not followed. Failure to comply with jail policy is not a *per se* constitutional violation. *Meier v. County of Presque Isle*, 376 F. App'x 524, 529 (6th Cir. 2010) (stating that the failure to comply with a departmental policy requiring that a detainee with a certain blood alcohol content be transported to a hospital was not a *per se* constitutional violation). Furthermore, other jail policies were followed. The medical evaluation form was correctly completed, and Stallard was asked if she was suicidal and continuously monitored. Moreover, the record does not show clear evidence of signs that Stallard's condition warranted immediate medical attention.

We find that Individual Defendants provided reasonable care consistent with their reasonable belief that Stallard had drunk too much alcohol. The video shows Hausman telling Stallard, "We'll give you a blanket and allow you to lay down for a while." The Jail's security cameras show that, not only did Individual Defendants give Stallard a blanket; but they checked on Stallard, on average, every twenty-five minutes. Specifically, Jail staff observed Stallard at:

(1) 4:31:09 a.m., (2) 4:42:44 a.m., (3) 4:59:52 a.m., (4) 5:16:24 a.m., (5) 5:20:05 a.m., (6) 5:24:35 a.m., (7) 5:39:01 a.m., (8) 7:08:51 a.m., (9) 7:35:38 a.m., and (10) 8:14:40 a.m. This means that, in roughly a four-hour period, Stallard was observed ten times. The frequency of observation, even in hindsight, is further proof that no reasonable juror could find Individual Defendants acted unreasonably.

The district court did not err by holding that there was no Fourth Amendment violation. Because Individual Defendants' actions were reasonable, we need not decide whether the Fourteenth Amendment deliberate indifference test could be met. *See Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010) (holding that the Fourth Amendment was the appropriate standard, but that conduct that violated the Fourteenth Amendment also establishes a Fourth Amendment violation, and therefore it was harmless error to apply the Fourteenth Amendment).

Even if we applied the Fourteenth Amendment standard, liability still would not attach because no evidence shows that Individual Defendants were deliberately indifferent to a serious medical need. In *Reed*, we said that the "failure to act as a reasonable person would have acted, does not by itself equal deliberate indifference." *Reed*, 508 F. App'x at 420. As noted above, the deliberate indifference test has objective and subjective requirements. The objective criterion requires a plaintiff to show a "sufficiently serious medical need[,]" which can be met by a showing that a "physician . . . has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment." *Burgess*, 735 F.3d at 467 (citing *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)). To satisfy the subjective prong, a plaintiff must show that a defendant had "a sufficiently culpable state of mind." *Brown*

*v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). A defendant's subjective mental state is established by showing that he had "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs." *Burgess*, 735 F.3d at 476 (quoting *Blackmore*, 390 F.3d at 896).

Smith cannot establish the subjective prong of the deliberate indifference standard. Individual Defendants testify that they thought Smith was intoxicated by alcohol, in no need of immediate medical care, and we hold that their actions were reasonable. Smith, however, correctly notes that she may prevail on her deliberate indifference claim if she submits evidence showing that Individual Defendants "refused to verify underlying facts that [they] strongly suspected to be true." *Phillips v. Roane Cnty.,* 534 F.3d 531, 541 (6th Cir. 2008). She asserts that Individual Defendants should have known that her mother was not suffering from alcohol intoxication because her mother denied drinking alcohol and possessed prescription medication. This argument fails for two reasons. First, although Smith argues that Individual Defendants should have known that her mother overdosed on prescription pills, we have held that it is not enough to establish deliberate indifference for a plaintiff to "demonstrate that the police officers *should have known* that the suspect ingested cocaine." *Weaver v. Shadoan*, 340 F.3d 398, 410-11 (6th Cir. 2003) (emphasis added). Secondly, Smith fails to provide evidence showing that her mother's medical need was consciously disregarded by Individual Officers. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned

as the infliction of punishment."). No reasonable juror could find that Individual Defendants acted with deliberate indifference to a serious medical need.

We find that the district court did not err by finding no constitutional violation.

### 2. *Sua Sponte* Dismissal

Smith argues that the district court *sua sponte* dismissed her claims, absent notice and opportunity to be heard. She contends that dismissal in this fashion is reversible error. Smith's argument lacks merit. "When a district court grants summary judgment *sua sponte*, its . . . procedural decision . . . is reviewed for abuse of discretion." *Shelby Cnty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund,* 203 F.3d 926, 931 (6th Cir. 2000). If we find a procedural abuse of discretion, we reverse and remand to provide the district court the opportunity to review all of the evidence before making a substantive decision. *See id.* There is no abuse of discretion in a *sua sponte* grant if the losing "party was on notice that [s]he had to muster the necessary facts to withstand summary judgment," *Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959-60 (6th Cir. 2007), and had a reasonable opportunity to respond. *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005). "[E]ven when the district court fails to provide adequate notice to the party against whom summary judgment is granted, its judgment will be upheld unless the losing party can demonstrate prejudice." *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013); *Advanced Concrete Tools, Inc. v. Beach*, 525 F. App'x 317, 319 (6th Cir. 2013). Accordingly, Smith must establish notice and prejudice before remand.

Because the parties concede that adequate notice was not provided, our inquiry focuses on prejudice. Prejudice requires Smith to "demonstrate [] that [she] could have produced new favorable evidence or arguments had more notice been given." *Smith*, 708 F.3d at 829 (quoting *Turcar, LLC v. IRS*, 451 F. App'x 509, 515 (6th Cir. 2011)). Smith fails to state what arguments she would have presented had notice been afforded; and, for the reasons already stated, we find that she could have presented none on which a reasonable jury could find a Fourth Amendment violation, much less a Fourteenth. We find that the district court did not abuse its discretion when it *sua sponte* dismissed her claims.

### B. Supervisory Liability

Smith seeks to hold Klamar, Lyons, and Dempsey liable under § 1983 based on their role as supervisors for Individual Defendants' alleged constitutional violation. She argues that each had an obligation to train Individual Defendants how to distinguish alcohol intoxication from other types of intoxication. She also maintains that a policy identifying a person at risk for a drug overdose should have been implemented. In order to prevail, "[a]t a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Smith concedes that supervisor liability cannot attach unless there is an underlying constitutional violation by Individual Defendants. Therefore, the district court did not err in dismissing this claim because no evidence establishes that Individual Defendants violated the Constitution.

### C.    Municipalities

Smith argues that Perkins and Erie are liable for inadequate training under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). In order to even assess whether a municipality may be held liable under *Monell* in a failure-to-train case, there must exist a constitutional violation. *Id.* at 690–91. Here, we have already concluded that no Individual Defendant violated the Constitution. Therefore, we affirm the district court's judgment as to the municipal liability claim.

### D.    Attorney's Fees

Smith requested attorney's fees and expenses under § 1988. The district court denied her request on the ground that she was not the prevailing party. The Civil Rights Attorney's Fees Awards Act of 1976 provides that a district court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). "'Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.'" *Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013) (quoting *Revis v. Meldrum*, 489 F.3d 273, 280 (6th Cir. 2007)); *see also DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 671 (6th Cir. 2006) ("Abuse of discretion exists only when a district court relies upon clearly erroneous factual findings, applies the law improperly, or uses an erroneous legal standard."). Because we find no error in the district court's holding, we find that the district court did not abuse its discretion when it declined to grant attorney's fees and expenses.

**E.      State Law Claims**

After determining that no reasonable juror could find a constitutional violation on the federal claims, the district court declined to exercise supplemental jurisdiction over the state law claims.  Smith's opening brief does not challenge the dismissal of her state law claims, and thus, we consider the argument waived.  *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 462 (6th Cir. 2003) ("An appellant waives an issue when he fails to present it in his initial briefs before this court.").

Even if she would have challenged their dismissal, her argument would fail.  Under 28 U.S.C. § 1367, a district court has broad discretion to decide whether to exercise jurisdiction over state law claims.  Supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's right." *Baer v. R & F Coal Co.*, 782 F.2d 600, 603 (6th Cir.1986) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  "Generally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *Gibbs*, 383 U.S. at 726) (citations omitted).  The district court cited §1367(c)(3) and case law to support its decision to decline to exercise supplemental jurisdiction over the state law claims.  We have reviewed the record, and find no abuse of discretion.

**IV.      CONCLUSION**

Accordingly, and for the above-stated reasons, we **AFFIRM** the judgment of the district court.

ALICE M. BATCHELDER, Circuit Judge, concurring in part and concurring in the result. Smith's complaint vaguely claimed that Margaret Stallard's "constitutional rights" were violated, without specifying which rights those might be. The Constitution includes many. It was not until Smith moved for summary judgment that she explicitly argued a Fourteenth Amendment violation, among others. The district court then granted Defendants summary judgment on Fourth Amendment grounds. It is clear that before this court Smith argues two possible legal standards arising under two separate constitutional amendments, and has waived any possible claims of violations of other constitutional rights. What is not clear is that these issues were properly raised in the district court such that they should be considered appropriate for us to decide on appeal.

Smith's opening appellate brief raises four issues on appeal: (1) whether officers violated Stallard's rights under the Fourth or Eighth Amendments; (2) whether the district court reversibly erred by not finding that the testimony of Donald L. Leach created a genuine issue of material fact; (3) whether the municipalities are liable for the officers' conduct; and (4) whether the supervising officers are liable for the actions of the officers who interacted with Stallard. I agree with the lead opinion on the latter two issues; the supervisors are not at fault for anything here, and nothing here rises to the level of imposing *Monell* municipal liability under 42 U.S.C. § 1983. *See D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (applying *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978), and its progeny). I write separately regarding the former two issues.

18

The first of those issues is whether the Fourth Amendment governs the facts pertaining to Stallard's death, versus the Eighth Amendment's standard, which could be applicable under these facts through the Fourteenth Amendment. "The question of which amendment supplies [Stallard's] rights is not merely academic, for the standards of liability vary significantly according to which amendment applies." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). Whether the Fourth, Eighth, or Fourteenth Amendment applies depends on whether the plaintiff was a (1) free citizen, (2) convicted prisoner, or (3) somewhere in between. *Lanman v. Hinson*, 529 F.3d 673, 680–81 (6th Cir. 2008). The Fourth Amendment applies to the first, *Graham v. Connor*, 490 U.S. 386, 388 (1989), and the Eighth Amendment to the second, *see Whitley v. Albers*, 475 U.S. 312, 318–22, 327 (1986); *Phelps v. Coy*, 286 F.3d 295, 299–300 (6th Cir. 2002). "When neither the Fourth nor the Eighth Amendment serves to protect citizens, courts have applied the Fourteenth Amendment." *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010).

The Fourteenth Amendment controls here. Stallard had not received a probable cause hearing, and the district court erred by applying a formalistic chronological approach to hold that the Fourth Amendment applied. The Fourth Amendment provides in part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. However, the interaction here between state agents and the decedent had nothing to do with either a "search" or a "seizure." So the officers' conduct pertaining to any medical matters is examined under the Fourteenth Amendment Due Process Clause, which provides, that ""[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." *Id.* amend. XIV, § 1, cl. 3. The Due

Process Clause requires police officers to provide adequate medical care to individuals in police custody prior to a criminal conviction. *See Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008). A person's right to adequate medical care is violated if the police acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), *quoted in Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).

When police fail to respond to a person's medical needs, "deliberate indifference" means "the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Burgess v. Fischer*, 735 F.3d 462, 476 (6th Cir. 2013) (citing *Estelle*, 429 U.S. at 104–05). We explained:

> We employ a two-prong test with objective and subjective components to assess such claims. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, we determine whether the plaintiff had a sufficiently serious medical need under the objective prong. A medical need is sufficiently serious if it has been diagnosed by a physician that has mandated treatment or it is so obvious that even a lay person would easily recognize the need for medical treatment. Second, we determine whether the defendant had a sufficiently culpable state of mind in denying medical care under the subjective prong. There must be a showing of more than mere negligence, but something less than specific intent to harm or knowledge that harm will result is required. The defendant must have knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs. . . .

*Id.* (citations, internal quotation marks and brackets omitted). The Supreme Court makes the comparison that "deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. Because she had not been convicted, and thus was not covered by the Eighth Amendment, that same standard of deliberate indifference applies to Stallard through the Fourteenth Amendment. *Burgess*, 735 F.3d at 472–73.

This standard was not met with regards to any of the individual defendants. The lead opinion explains why the individual defendants' conduct would satisfy even the objective reasonableness standard of the Fourth Amendment, and that any conduct that is reasonable under the Fourth Amendment automatically falls short of the more demanding standard of showing deliberate indifference under the Fourteenth Amendment. Accordingly, the defendants did not violate Stallard's rights under the Fourteenth Amendment.

The second issue, which is not addressed in the lead opinion, is whether the district court reversibly erred by not adopting the reasoning of—or even citing—the testimony of Smith's expert Donald L. Leach, whose deposition argued that the officers' actions were deficient on the night in question. Specifically, Leach argues that Stallard's symptoms showed a severe medical condition necessitating an appropriate response.

A district judge is the gatekeeper who "evaluat[es] the relevance and reliability of proffered expert testimony with heightened care." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007). Even when a district court does admit an expert's testimony, the court can discount it if the court finds that the evidence does not amount to more than a scintilla, "insufficient to allow a reasonable juror to conclude that the position more likely than not is true." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993).

Smith's argument that the district court erred by not even acknowledging Leach's deposition in its decision is without merit. Leach is not an expert. He possesses no special education or training to evaluate whether a person is in medical distress, and what sort of care is appropriate. Expert testimony is properly excluded if "men of common understanding are as

capable of comprehending the primary facts and of drawing correct conclusions from them." *Salem v. United States Line Co.*, 370 U.S. 31, 35 (1962). The district court therefore did not err by choosing to disregard Leach's deposition.

For the foregoing reasons, I concur in the result.