NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0839n.06

No. 14-5146

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Nov 06, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| RONALD A. CHISHOLM, Limited, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Western |
| | ) | District of Kentucky |
| AMERICAN COLD STORAGE, INC.; | ) | |
| AMERICAN COLD STORAGE, LP, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

_____/

**Before: GUY, CLAY, and WHITE, Circuit Judges.**

**PER CURIAM**. Plaintiff, Ronald A. Chisholm, Ltd. ("Chisholm") contracted with Defendants, American Cold Storage, Inc. and American Cold Storage North America, LP ("ACS"), to store Chisholm's meat products. Chisholm claimed that ACS breached this contract when it released, without proper authorization, certain meat products to former Third-Party Defendant, Abilene Texas Foods ("Abilene"). Chisholm also made claims against ACS for breach of a contractual bailment and breach of fiduciary duty related to the disputed release. Central to these claims is whether email correspondence between Chisholm, ACS, and Abilene authorized the release. Chisholm

also challenged whether it was bound by a damages provision in the parties' contract. The district court granted ACS's motion for summary judgment on all of Chisholm's claims. Chisholm appeals. Because a genuine issue of material fact remains on the issue of liability, we **REVERSE** and **REMAND**. This necessitates **VACATING** the district court's ruling on the applicability of the damages limitation.

## I.

In 2007, ACS began storing Chisholm's frozen meat products. Later that year, Chisholm began to sell unprocessed meats to Abilene on credit. Abilene soon reached its credit limit with Chisholm and fell behind on payments. The parties entered into a Master Product Supply Agreement ("MPSA") so that Chisholm could collect Abilene's debt. Under the MPSA, Chisholm would authorize ACS to release unprocessed meat to Abilene under tight controls, including pre-payment. Abilene would process the meat and ship it back to Chisholm's storage unit at ACS. Abilene would then sell the finished product to its customers, remitting a portion of the proceeds to Chisholm. Chisholm was to retain title to the meat product until Abilene's customers were invoiced.

ACS was not a party to the MPSA but it played an important role in the agreement in that ACS acted as a gate-keeper for Chisholm's products; ACS was not to release Chisholm's products to Abilene unless Chisholm gave express authorization. The parties agree that ACS's duty to Chisholm arose from both the warehouse receipt that ACS would give to Chisholm upon receipt of meat products for Chisholm's account, as well as the course of dealing between the parties. Section 7 of ACS's warehouse receipt

contained the following provision related to release of Chisholm's goods: "[ACS] reserves the right not to deliver or transfer GOODS to or for the account of others except upon receipt of written instructions properly signed by [Chisholm]."

Initially, if Abilene wanted Chisholm to release its meat products, Abilene would email Chisholm and ACS requesting the same. If Chisholm approved the release, it would authorize ACS via an email to release Chisholm's product to Abilene. ACS contends that through a series of emails, Chisholm gave ACS a blanket authorization to release Chisholm's product to Abilene. Chisholm contends that it was merely authorizing ACS to allow Abilene access to information related to Chisholm's inventory – not giving a blanket authorization to release its goods to Abilene.

### *The Emails*

Ms. Jackie Kraay (Chisholm) sent the following email to ACS employees, Shannon McKune and Cori De La Fuente on September 29, 2008, at 8:31 a.m.: "Shannon/Cori[:] Abilene TX Foods is allowed to have access to Chisholm's inventory and paperwork until further notice. If you have any questions, please contact me, otherwise, please forward the paperwork to Ryan [Ranalli, at Abilene] when requested. Thanks! Jackie."

That email includes two additional messages that were allegedly forwarded with the 8:31 a.m. email to Ms. McKune and Ms. De La Fuente. The first message sent at 8:15 a.m. that same day was from Ms. Kraay to Ryan Ranalli at Abilene asking when an order would be ready to ship. The second message, sent at 8:20 a.m. that day from Ms.

Ranalli to Ms. Kraay, indicates that she will check and then asks, "Is there anyway you can send an email to Cori stating that we are aloud [*sic*] to get copies of the paperwork for Chisholm so we do not have to go through this every time I need an inventory or withdrawal paperwork? Thanks!" Abilene was frustrated with the amount of time it took to get information from ACS about Chisholm's inventory. This information was critical for Abilene to bill its customers in a timely manner.

ACS also points to an October 6, 2008 email from Ms. Kraay to Ms. De La Fuente sent at 9:35 a.m. that stated, "Cori[:] Confirming that I gave authorization for Abilene to have access to our inventory, INCLUDING warehouse receipts and withdrawal notices. Thanks! Jackie." This message also included a forwarded message from Karen Nicholson at Abilene to Ms. Kraay, sent less than ten minutes earlier, which reads:

> The online access to account information has been set up at [ACS]. We have access to view the inventory but that is it. Can you please authorize access to view and print warehouse receipts and withdrawls [*sic*], this is more important than viewing the Inventory. It takes from 24 hours to never to get this information faxed to us from [ACS]. Thanks, Karen[.]

ACS did not seek further clarification as to these emails and began releasing Chisholm's products to Abilene without additional authorization from Chisholm – a decision that initially cost Chisholm over $4,000,000. The error was discovered when Chisholm did an audit of its inventory in the spring of 2009.

## II.

We review the district court's grant of summary judgment de novo. *Noe v. PolyOne Corp.*, 520 F.3d 548, 551 (6th Cir. 2008). Summary judgment is appropriate "if

the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine

issue of fact for trial when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986).

> We must ultimately decide whether the evidence presents a sufficient
> disagreement to require submission to a jury or whether it is so one-sided
> that one party must prevail as a matter of law. In doing so, the evidence is
> construed and all reasonable inferences are drawn in favor of the
> nonmoving party.

*Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (internal citations and quotation

marks omitted).

## III.

### A.     The Disputed Authorization

The district court held that the emails were unambiguous because "on their face,

[they] authorize ACS to release Chisholm's meat to Abilene." Other than the disputed

emails, there is nothing in the record to suggest that it was the intention of Chisholm to

release anything other than the inventory documents. Similarly, there can be no doubt

that ACS intentionally released the meat inventory to Abilene. The question that remains

for resolution, however, is whether the exchange of correspondence between all three

parties, taken in context, was reasonably viewed by ACS as authorization to release

product rather than paperwork. The district court concluded it was as a matter of law.

We disagree.

Although the one email from Chisholm does refer to access to inventory, the word inventory itself is susceptible to more than one meaning. WEBSTER'S THIRD INTERNATIONAL DICTIONARY, UNABRIDGED (2014), defines inventory as "an itemized list of current assets" and also "the quantity of goods or materials on hand." Given the correspondence among all three parties and that the email that included the word "inventory" also speaks of "paperwork", it is less than clear which meaning was intended. Any interpretation of what was intended also must be viewed against the backdrop of two other facts. The past dealing among the parties strictly limited release of product by ACS to Abilene to be authorized on a request-by-request basis. Also, all of the time-related correspondence among the parties as it related to "inventory" was referring to paperwork.

Under these circumstances it cannot be said that after drawing all inferences in favor of the nonmoving party, the evidence is so one-sided that one party must prevail as a matter of law. *Burgess*, 735 F.3d at 471.

**B.      "Good Faith Delivery" Defense under K.R.S. § 355.7-404**

The district court held that ACS was entitled to rely on the good-faith delivery defense under K.R.S. § 355.7-404 because, through the emails, Chisholm had authorized the release of the goods in question. Because we reject this conclusion, the district court's grant of summary judgment on this issue must be reversed as well.

C.      **Damages Limitation**

ACS claims that any liability that it has for the release of Chisholm's goods is limited by Section 9(d) of the warehouse receipt. That section instructs that if ACS is liable for loss, damage, or destruction of goods, its liability is limited to the lesser of the following: (1) the actual cost of replacing the goods; (2) the fair market value of the goods; (3) 50 times the monthly storage charge for the goods; or (4) $.50 per pound for the goods. The district court held that "in the event that ACS is liable for Chisholm's damages, then the warehouse receipts' liability provision limit[s] the amount of those damages."

Chisholm claims that because ACS was the first to breach the terms of the warehouse receipt, ACS cannot enforce the damages limitation in that same contract. The district court did not address the merits of this argument because it concluded that ACS had not breached the contract by releasing Chisholm's property to Abilene. Because we reverse the district court's grant of summary judgment on this point, we vacate the district court's ruling on this issue so it may properly consider Chisholm's argument.

**REVERSED IN PART AND VACATED IN PART**.