RENDERED:  AUGUST 15, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1131-MR

TAMMY FLOURNOY                                                            APPELLANT

v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE TRACY E. DAVIS, JUDGE
ACTION NO. 23-CI-005984

BRANDON ARNOLD                                                            APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ACREE AND MOYNAHAN,
JUDGES.

MOYNAHAN, JUDGE:  In this civil case involving a bailment, Appellant Tammy
Flournoy appeals the Jefferson Circuit Court's ruling in favor of Brandon Arnold
and seeks a new trial.  Because Arnold failed to meet his legal burden and the
Circuit Court erroneously applied our precedent for analyzing bailments, we
VACATE the Final Order of the Jefferson Circuit Court and REMAND the case
for a new trial in accordance with this Opinion.

## I.    BACKGROUND

Appellant Flournoy was the victim of a hit and run accident in July 2022 that damaged her 2007 Dodge Charger.  Appellee, Brandon Arnold, is the cousin of Flournoy and at the time of the accident owned a body shop in Louisville.  Flournoy contacted Arnold to repair her vehicle, and Arnold had the car towed to his body shop in August 2022.  The financial arrangement for the repairs involved Flournoy settling her claim with her car insurance company and receiving checks for the repair.  She then forwarded the insurance proceeds to Arnold via Cash App to cover the repair work.  The record reflects that repair work payments from Flournoy to Arnold were made on August 17, 2022, September 22, 2022, and November 11, 2022.

The trial court record contained text messages spanning a range of dates from October 2022 through July 2023 showing Flournoy kept checking with Arnold about the status of her vehicle.  On March 9, 2023, Flournoy texted Arnold that she wanted to take back possession of the vehicle even if not repaired.[1]  However, on July 26, 2023, Arnold texted Flournoy with the unfortunate update

---

[1] Trial record ("TR") 88.  The record contained multiple text messages between Flournoy and Arnold.  Here, the Court is referring specifically to the text message from Flournoy to Arnold on March 9, 2023, that reads, "Cuzz. . . at this point. . .  u not responding to none of my text or phone calls. . . I just rather have my car back the way it is right now. . . I will finish everything myself."  Further, in TR 91, the record contains two text messages from Flournoy to Arnold on July 13, 2023, that indicate Flournoy gave instructions to return the car to her.  The first message read, "You gonna have my car ready by Sat?"  Arnold followed up that message with another text that read, "If not. . . I will get it Fri. . . but I need it whether the rims are finished or not[.]"

that her vehicle had been stolen from another shop on Dixie Highway in Louisville, in an incident where the employee of the third-party detailing shop was held at gunpoint and tied up as a cell phone and Flournoy's Dodge Charger were stolen.

Appellant Flournoy filed a *pro se* Complaint against Arnold in the Jefferson Circuit Court on September 28, 2023. The Circuit Court interpreted Flournoy's claim as one for negligence related to the bailment between her and Arnold. After Arnold was served, he filed an Answer on December 27, 2023. Following an unsuccessful court-ordered mediation, the Circuit Court held a hearing on Flournoy's Motion for a Bench Trial on May 6, 2024, and in that hearing explained the way party testimony would be elicited, making an express reference to the opportunity for cross-examination.

During the initial bench trial on August 14, 2024, Flournoy represented herself while Arnold failed to appear. At this initial hearing, the Court heard testimony from Flournoy and indicated in the video record it would rule in Flournoy's favor and closed the evidence. However, after the closing of testimony, Arnold appeared and filed a motion on the same day seeking to be heard on the case. Subsequently, the Court held a hearing on Arnold's motion on September 3, 2024. During that hearing, Arnold testified that his truck broke down on the day of the initial bench trial and the Circuit Judge also took notice that the elevators in the

Jefferson County Circuit Courthouse were down on that day. The trial court then indicated it would set another hearing date in September where Arnold could more fully explain why he was late to the initial bench trial date, but also said that the next hearing would be extremely brief, and that Arnold would be allowed to put on proof if he gave a compelling reason for not appearing on time for the first bench trial.

During the hearing on September 9, 2024, the Court took evidence from Arnold and heard again why he failed to appear at the initial date for the bench trial. The Court indicated that it did not feel the need to put on testimony again, but then proceeded to take the direct examination of Arnold. During this second trial day, there was a disputed issue of fact about whether Arnold had taken Flournoy's car without her knowledge or instruction to the third-party detailing shop. Arnold claimed that Flournoy was aware of her car being moved to the detail shop where it was stolen. However, Flournoy tried to interrupt this line of testimony to dispute her knowledge of the transfer to the detail shop, and the Circuit Judge cut off Flournoy and told her the Court would ask her later about the disputed testimony. At various times during Arnold's direct examination by the Court, Flournoy attempted to dispute relevant facts from Arnold's testimony.[2]

---

[2] Video record ("VR") 9/9/24 at 9:41:07 (disputing knowledge of the car transfer to the detail shop); VR 9/9/24 at 9:48:48 (disputing facts and Circuit Judge admonishing the parties to take a time out); VR 9/9/24 at 9:57:30 (Circuit Judge telling Flournoy that she will get to her and

In our review of the trial record of September 9, 2024, it was observed that the Circuit Judge asked questions of Arnold but never permitted Flournoy to ask cross-examination questions despite multiple assurances the Court would allow the opportunity for each party to ask questions of the other. After taking the direct examination of Arnold, the Court indicated it would recess and directed both parties to get together the proof they wanted to present regarding the ultimate issue of figuring out which party owed money to the other, if any.

When the Court resumed from its recess, the parties again gave conflicting testimony on the fact issue of whether Flournoy had knowledge of her car being transferred to the detail shop.[3] Flournoy testified that the car never needed to go to the detail shop, while Arnold testified that Flournoy knew that the car was going to the detail shop, and that he texted Flournoy that her car was completed. In the video record, the Circuit Judge indicated that any negligence that occurred in this case was attributed to the detail shop where the theft occurred.

The Circuit Judge also expressly stated that Arnold had the burden of proof to show the loss was not through his negligence, and said in the video record

admonishing that Arnold and Flournoy are not going to devolve into argument; Circuit Judge telling Flournoy that the Court has heard her part but that Arnold was not previously here); VR 9/9/24 at 9:58:07 (Circuit Judge explaining Court will ask questions of Arnold and afterwards that Flournoy would be able to ask questions of Arnold, and also saying that if Flournoy wants to testify she will be given the opportunity and that Arnold would be able to ask her questions).

[3] VR 9/9/24 at 12:21:16 (Flournoy disputing that detailing ever needed to be done on her car).

that there was no testimony from either party that Arnold did not act with ordinary care. The trial court orally indicated that the issue in the instant case was whether Flournoy had knowledge that the car was being taken to the detail shop. Shortly thereafter, the trial court adjourned the hearing and took the matter under submission without allowing the parties to conduct cross-examination. Subsequently, on September 12, 2024, the Circuit Court entered its Findings of Fact, Conclusions of Law, and Judgment ("Final Order").

In the Final Order, the Circuit Court indicated that it interpreted Arnold's motion, dated August 14, 2024, as a CR[4] 59.01/59.02 motion for a new trial and granted the motion citing CR 59.01(c) – "accident or surprise which ordinary prudence could not have guarded against." The Final Order found for Arnold on the basis that a bailment had been created between the parties, but that Flournoy offered no allegation, proof, or evidence that Arnold had anything to do with the theft, or that the theft was in any way caused by Arnold's negligence. Afterwards, Flournoy appealed the ruling, but Arnold did not file a response brief.

## II.    STANDARD OF REVIEW

Where an appellee fails to file a brief, the Appellate Court may:

> "(a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and

---

[4] Kentucky Rules of Civil Procedure.

reverse the judgment without considering the merits of the case."  Kentucky Rules of Appellate Procedure ("RAP") 31(H)(3).

*Commonwealth v. Blackford*, 674 S.W.3d 465, 467 (Ky. App. 2023).

When an appeal is taken from a bench trial, the standard of review is found in CR 52.01, which dictates that findings of fact shall not be set aside unless clearly erroneous, and there is deference to the trial court's ability and opportunity to assess the credibility of the witnesses.  *Family Trust Found. of Ky., Inc. v. Horse Racing Comm'n*, 620 S.W.3d 595, 599-600 (Ky. 2020).  Under CR 43.01(1), the party holding the affirmative of an issue must produce evidence to prove it.

Where a trial judge's "findings of fact . . . are not clearly erroneous, *i.e.*, are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion."  *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (internal citation omitted).  However, while there is deference to the lower court's findings of fact, "appellate review of legal determinations and conclusions from a bench trial is *de novo*." *Id.* (citation omitted).

## III.    ANALYSIS

Pursuant to RAP 31(H)(3)(a), given Arnold's lack of response to this appeal, we accept the facts and issues outlined in Appellant Flournoy's brief as correct.  Further, although not obliged to reach the underlying merits of the case,

*see* RAP 31(H)(3)(c), we do so because Flournoy's assertion that the Circuit Court incorrectly applied the bailment rule found in *Webb v. McDaniels*, 205 S.W.2d 511, 513 (Ky. 1947), is well-taken.

In a bailment, Kentucky courts have held that once a "bailor [has proven] delivery and the bailee fails to return the property according to the contract of bailment, the burden is then on the bailee to prove that the loss was not through his negligence." *Id.* (citing *Threlkeld v. Breaux Ballard, Inc.*, 177 S.W.2d 157, 161-62 (Ky. 1944)). We agree with the Circuit Court that Flournoy met her initial burden by establishing that her Dodge Charger was delivered to Arnold in August 2022 and that a bailment for hire or mutual benefit was created at that time. Once that bailment was established, the burden then shifted to Arnold to prove that any related loss was not caused by his negligence, or that of any of his agents or employees. Although the Circuit Court found Arnold had carried his burden, its analysis omitted a critical factual finding – a determination of whether the vehicle's transfer to the detailing establishment from which it was ultimately stolen was authorized.

This finding was necessary because

> [w]here the bailee undertakes to deal with the property in
> a manner not warranted by his instructions, expressed or
> implied, and the property is lost, destroyed or put beyond
> the bailee's power to return, then he is liable therefor
> irrespective of negligence on his part, unless his act is

-8-

> ratified by the bailor with full knowledge of the circumstances.

*Webb*, 205 S.W.2d at 513. The Circuit Court found that Arnold had completed the repairs to Flournoy's Charger and then delivered the car to a detailer on Dixie Highway, but the question of Flournoy's authorization for that transfer impacts the analysis. *See, e.g.*, *Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*, 590 F. App'x 593, 596 (6th Cir. 2014) (reversing a summary judgment ruling because an issue of material fact existed as to whether an exchange of correspondence between a bailor and bailee authorized the delivery of certain goods). Here, in the established bailment, nothing expressly or impliedly allowed Arnold to deliver the Dodge Charger to anyone but Flournoy. Further, pursuant to CR 43.01(1), Arnold held the burden of presenting evidence to prove Flournoy ratified his act of delivering the car to a third party rather than returning it to her. Although testimony was offered by the parties about their respective understandings on the transfer's authorization, no finding was made by the Circuit Court. Accordingly, Arnold did not meet his burden, and the trial court's Final Order in his favor must be reversed.

We further note that while flexibility exists for bench trials involving *pro se* litigants, it is important for trial judges to retain fundamental procedural process for taking testimony, including the opportunity for cross-examination. *See, e.g.*, *Smith v. Bear, Inc.*, 419 S.W.3d 49, 55 (Ky. App. 2013) ("Proceeding *pro se*

-9-

does not provide one with 'a license not to comply with relevant rules of procedural and substantive law.'") (quoting *Faretta v. California*, 422 U.S. 806, 835 n.46, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975)); *Watkins v. Fannin*, 278 S.W.3d 637, 643 (Ky. App. 2009) ("Kentucky courts still require *pro se* litigants to follow the Kentucky Rules of Civil Procedure.").

## IV.     CONCLUSION

The Jefferson Circuit Court's Final Order is VACATED, and this matter is REMANDED for a new trial consistent with this Opinion.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Tyler Larson
Louisville, Kentucky